IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

*United States of America v. Charles Rashid Malik Lee*
Case No. 3:21-cr-00117-TMB-SAO-1

By:         THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS:     ORDER FROM CHAMBERS

The matter comes before the Court on the Final Report and Recommendation (the "Final R&R") of the Magistrate Judge,[1] recommending the Court deny Defendant Charles Rashid Malik Lee's Motions to Suppress at Docket 21 and Docket 53 (the "Motions").[2] Lee objects to the Final R&R and the United States (the "Government") responds in opposition to these objections.[3] After *de novo* review,[4] and for the reasons discussed below, the Court **ACCEPTS and ADOPTS** the Final R&R at Docket 101. Consequently, the Motions at Docket 21 and Docket 53 are **DENIED**.

*A. Background*

On October 5, 2021, Magistrate Judge Scoble issued a search warrant authorizing the search of Lee's Anchorage residence, located at 6711 East 10th Avenue (the "Subject Residence") and Lee's 2015 Chevrolet Tahoe (the "Subject Vehicle").[5] In support of the search warrant, Federal Bureau of Investigation ("FBI") Special Agent ("SA") Katherine Nelson submitted an affidavit, in which she described (1) her experience and knowledge as an FBI Special Agent,[6] (2) her knowledge of the common methods and behaviors of narcotics traffickers,[7] and (3) the Lee investigation and probable cause.[8]

In the "Investigation and Probable Cause" section of the affidavit, SA Nelson outlines her participation in the drug trafficking investigation of Robert Miller, which ultimately led law

---

[1] Dkt. 101 (Final R&R).
[2] Dkt. 21 (Motion to Suppress); Dkt. 53 (Motion to Suppress Franks Violation).
[3] Dkt. 50 (Objections to Initial R&R); Dkt. 51 (Government Opposition); Dkt. 109 (Objections to Final R&R); Dkt. 112 (Supplemental Objections).
[4] 28 U.S.C. § 636(b)(1)(C) ("Within fourteen days after being served with a copy [of the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").
[5] Dkt. 23 at 1–7 (Sealed Exhibit).
[6] *Id.* at 9.
[7] *Id.* at 9–17.
[8] *Id.* at 17–33; Dkt. 101 at 3–4.

1

enforcement to identify Lee as an alleged trafficking participant.[9] This section of the affidavit begins by describing multiple explicit and coded exchanges regarding the trafficking of narcotics, between alleged co-conspirators Donald McGranahan and Josiah Voss.[10] For example, the affidavit recounts that law enforcement intercepted communication from McGranahan in which he specifically requested that Voss's drug supply be "good and no fentanyl," to which Voss replied that he would charge "13 for 10."[11]

The affidavit then provides information connecting McGranahan's and Voss's activities with Miller. First, the affidavit states that on May 23, 2021, law enforcement intercepted McGranahan's instructions to Voss to purchase ten ounces of heroin; after this directive, at about 3:13 p.m., Voss placed a short call to "TT-3," a cell phone registered to Miller.[12] A few minutes after the call to TT-3, Voss called McGranahan and "advised that he had just spoken with his supplier" and that the supplier was "ready for ten if you want to do it."[13]

Later that day, at approximately 7:57 p.m., McGranahan contacted Voss again to arrange for the purchase of methamphetamine and cocaine.[14] SA Nelson states that McGranahan and Voss used the words "powder" and "windows" which are "commonly used slang terms" for these drugs.[15] Immediately following this call, Voss again called TT-3, with the call lasting just under a minute.[16] On that same day, at approximately 9:27 p.m., Voss placed another call to TT-3. Then at 9:52 p.m., McGranahan called Voss, inquiring as to the status of Voss's source of drug supply.[17] Voss replied that his source "said he was on his way about 20 minutes ago."[18] Phone records from that night reflect that Voss made calls exclusively to TT-3 and McGranahan.[19]

On both May 24 and May 26, 2021, this same pattern of communication between Voss, McGranahan, and TT-3 continued: Voss and McGranahan discussed the purchase of drugs and Voss placed short calls to TT-3 following these conversations.[20] SA Nelson concludes that, based on her training and experience, these series of calls on May 23, 24, and 26, 2021, meant that "McGranahan was contacting Voss to arrange the purchase of narcotics" and that Voss was then contacting his source, believed to be Miller, on calls made to TT-3.[21]

The affidavit next provides the grounds for probable cause linking Miller's drug activities to Lee, stating that on August 19, 2021, investigators intercepted electronic communications between

---

[9] Dkt. 23 at 17–24.
[10] *Id.* at 18–23.
[11] *Id.* at 18.
[12] *Id.* at 18–19.
[13] *Id.* (internal citations omitted).
[14] *Id.* at 19.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 20.
[18] *Id.* (internal citations omitted).
[19] *Id.*
[20] *Id.* at 20–21.
[21] *Id.* at 20–23.

Miller and Lee, which led law enforcement to believe that Lee was contacting Miller to arrange a narcotics transaction.[22] After intercepting the communications between Miller and Lee, law enforcement observed Miller leave his residence and drive to an Arby's parking lot. There, Miller parked, exited his vehicle, and got into the passenger seat of the Subject Vehicle driven by Lee. Lee drove through the Arby's drive-thru with Miller, eventually returning to Miller's parked car. Surveillance then observed Miller exit the Subject Vehicle, walk to his car, grab a bag from it, and return to the Subject Vehicle, giving Lee the bag.[23] SA Nelson asserts that, based on her training and experience, this activity is consistent with narcotics trafficking, and that in the drive-thru Lee and Miller likely confirmed the price and amount of drugs to be sold, and that Miller subsequently gave these drugs to Lee in the bag.[24]

After this exchange, surveillance followed Lee to a Walmart parking lot and observed him load shopping bags into the Subject Vehicle with "an unknown female."[25] Eventually, Lee returned to the Subject Residence and continued to a Walgreens parking lot. There, Lee parked the Subject Vehicle, exited, and entered a nearby Dodge pickup truck through its front passenger door. Law enforcement then "observed the unknown male driver of the [truck] hunched over the middle console with Lee."[26] A short time later, Lee exited the truck and drove the Subject Vehicle back to the Subject Residence.[27]

At the end of the affidavit, SA Nelson notes that the subscriber on record for Lee's cell phone is "Shantyle Arlene Nicole Anselm," who "appears to live with Lee . . . and is believed to be in a relationship with him."[28]

On October 12, 2021, law enforcement executed the search warrant on the Subject Residence and Subject Vehicle, recovering: (1) 50 grams or more of pure methamphetamine; (2) 100 grams or more of a mixture and substance containing a detectible amount of heroin; (3) a mixture and substance containing a detectable amount of cocaine; (4) a Glock 30 .45 caliber semiautomatic pistol; and (5) a Ruger 9mm semiautomatic pistol.[29]

On December 15, 2021, Lee was charged by indictment with three counts: (1) Possession of Controlled Substances with Intent to Distribute;[30] (2) Possession of Firearms in Furtherance of Drug Trafficking Crime;[31] and (3) Felon in Possession of Firearms and Ammunition;[32] and

---

[22] *Id.* at 25–28 (emphasis added).
[23] *Id.* at 26.
[24] *Id.*
[25] *Id.* at 27.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 27–28.
[29] Dkt. 2 at 2 (Indictment).
[30] Dkt. 2; *see* 21 U.S.C. § 841(a)(1), (b)(1)(A)–(B).
[31] Dkt. 2; *see* 18 U.S.C. § 924(c)(1)(A)(i).
[32] Dkt. 2; *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2).

subsequently arrested. On January 4, 2022, Lee was released from custody on his own recognizance.[33]

On March 23, 2022, Lee filed his first Motion to Suppress the evidence resulting from the execution of the search warrant (the "First Motion").[34] The Magistrate Judge denied Lee's request for an evidentiary hearing on the matter, determining that Lee had not shown that there were any "contested issues of fact" to resolve.[35]

On July 29, 2022, the Magistrate Judge submitted a sealed Initial R&R, recommending Lee's Motion be denied.[36] On August 12, 2022, Lee filed objections to the Initial R&R, to which the Government replied.[37] Ten days later, and before the Magistrate Judge had issued the Final R&R, Lee sought leave to file a second Motion to Suppress (the "Second Motion"), which incorporated the suppression arguments made in the First Motion and included a new *Franks* violation allegation.[38] The Court granted leave for Lee's late filing and the Government filed its opposition to the Second Motion.[39] On November 15, 2022, the Magistrate Judge held an evidentiary hearing on the *Franks* violation presented in the Second Motion.[40] A week after the hearing, the Government filed a Notice of Supplemental Authority to which Lee responded.[41] On February 16, 2023, the Magistrate Judge submitted the Final R&R.[42]

### B. The First Motion to Suppress

On July 29, 2022, the Magistrate Judge submitted the Initial R&R, recommending the Court deny the First Motion because the issuing magistrate's "probable cause determination was not clearly erroneous," and even if it were, the good-faith exception to the exclusionary rule would apply.[43] On August 12, 2022, Lee lodged seven objections to the Initial R&R[44] and the Government filed an opposition to these objections.[45]

In the First Motion, Lee asks the Court to suppress "all evidence that resulted from the execution of the search warrant" because the warrant was not supported by probable cause and because the

---

[33] Dkt. 12 (Order of Release).
[34] Dkt. 21.
[35] Dkt. 39 (Notice of Request for Hearing); Dkt. 41 (Response); Dkt. 42 at 5 (Order Denying Hearing) (quoting *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986)).
[36] Dkt. 46.
[37] Dkt. 50; Dkt. 51.
[38] Dkt. 52 (Motion for Leave to File); Dkt. 53; *see Franks v. Delaware*, 438 U.S. 154 (1978).
[39] Dkt. 59 (Text Order); Dkt. 62 (Response).
[40] Dkt. 74 (Minute Order); Dkt. 77 (Transcript).
[41] Dkt. 80 (Notice of Supplemental Authority); Dkt. 99 (Lee Supplement).
[42] Dkt. 101. The Magistrate Judge held the First Motion in abeyance pending resolution of the Second Motion.
[43] Dkt. 46 at 2–3.
[44] Dkt. 50.
[45] Dkt. 51.

good-faith exception to the exclusionary rule does not apply.[46] Lee asserts that SA Nelson's affidavit "does not provide probable cause to believe that a crime [was] committed and that evidence of the crime w[ould] be found at the residence that was searched."[47] Lee explains that SA Nelson's affidavit is deficient because it is

> based on conclusory allegation[s] because the affiant failed to offer factual bases for her knowledge to support the allegations that: (1) Miller is a drug dealer; (2) Miller and Lee were involved in a drug deal in the "drive thru" at Arby's; (3) the bag Miller allegedly gave to Lee contained narcotics; (4) [Shantyle] Arlene Nicole Anselm was in a relationship with Lee; (5) [the Subject Residence] was Lee's residence, and (6) evidence of narcotics or contraband would be found at [the Subject Residence].[48]

Moreover, Lee argues that even if probable cause supports SA Nelson's affidavit, the good-faith exception to the exclusionary rule does not apply.[49] Lee concludes that suppression is therefore warranted.[50]

The Government opposes the First Motion because SA "Nelson's affidavit supported [the issuing magistrate's] finding of probable cause, and, even assuming for sake of argument that it did not, the good-faith exception to the exclusionary rule applies."[51] The Government argues that "in the case of drug dealers, evidence is likely to be found where the dealers live";[52] because SA "Nelson's affidavit provided probable cause that Lee was a drug dealer residing at the [Subject Residence] without relying on 'wholly conclusory statements,'" the issuing magistrate "properly granted the search warrant."[53]

Further, the Government observes that the SA Nelson's affidavit was grounded in probable cause because "Lee was observed taking part in multiple suspected drug transactions, and these transactions involved conduct that was suspicious on its face"; furthermore, SA Nelson's belief that these transactions "were consistent with drug trafficking" was not a "factually unsupported

---

[46] Dkt. 21 at 1.

[47] *Id.* at 2 (emphasis omitted).

[48] Dkt. 21 at 4 (citing *United States v. Underwood* 725 F.3d 1076 (9th Cir. 2013) ("If the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class."); *United States v. Weber* 923 F.2d 1338, 1345 (9th Cir. 1990).

[49] *Id.* at 9.

[50] *Id.* at 11–12.

[51] Dkt. 27 at 1–2.

[52] *Id.* at 9 (citing *United States v. Damitz*, 495 F.2d 50, 55 (9th Cir. 1974) (internal quotations omitted)).

[53] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

5

conclusory allegation[].”[54] The Government argues that SA Nelson fully supported her affidavit's statements and that, based on her work as an FBI Special Agent and familiarity with the common methods used by drug traffickers, the search warrant was not "based on mere speculation."[55] As such, the Government contends that the affidavit provides "a substantial basis to determine probable cause."[56]

In addition, the Government argues that even if the search warrant were to lack probable cause, the good-faith exception to the exclusionary rule applies, reasoning that the issuing magistrate's probable cause determination was not "entirely unreasonable," nor did SA Nelson deceive the issuing magistrate during the warrant process.[57]

### C. The Second Motion to Suppress

On August 29, 2022, Lee filed the Second Motion, setting forth two new arguments for suppressing the evidence produced by the search warrant: (1) a *Franks* violation and (2) "stale" information in the affidavit.[58] First, Lee argues that SA Nelson made a deliberately or recklessly false statement in violation of *Franks v. Delaware*[59] when she wrote: "Based on surveillance observations *Shanyle Ansel* [sic] appears to live with Lee at the Subject Residence and is believed to be in a relationship with him."[60]

In support of this argument, Lee submits two sworn affidavits from himself and Shantyle Ivory (née Anselm),[61] claiming to demonstrate that:

> (1) Shantyle Arlene Nicole Anselm has never set foot at [the Subject Residence] while he lived there; (2) there is no one by the name Shantle [sic] Ansel at the residence; (3) due to differences between family members Shantyle Arlene Nicole Anselm does not visit [the Subject Residence]; (4) Shantyle Arlene Nicole Anselm is defendant's sister; (5) there is no reasonable basis upon which a law enforcement officer could believe that defendant was in a relationship with his sister, Shantyle Arlene Nicole Anselm; (5) defendant does not know anybody by the name "Shanyle Ansel" and (6) there is no reasonable basis upon which law affiant [, SA Nelson,] or other law enforcement would reasonably believe that

---

[54] *Id.* at 13 (citing *Weber*, 923 F.2d at 1345 (affidavit containing expert opinion must explain basis of opinion)); Dkt. 23 at 9.
[55] *Id.* (citing *Weber*, 923 F.2d at 1345).
[56] Dkt. 27 at 13 (citing *Gates* 462 U.S. at 239; *Weber*, 923 F.2d at 1345).
[57] *Id.* at 14 (quoting Dkt. 21 at 11); *see also United States v. Leon*, 468 U.S. 897 (1984).
[58] Dkt. 53 at 1. The Government opposed this late filing, but the Court granted Lee leave to submit this untimely motion. Dkt. 58 (Opposition to Late Filing); Dkt. 59 (Text Order).
[59] 438 U.S. 154 (1978).
[60] Dkt. 53 at 3 (citing Dkt. 23 at 27) (emphasis added).
[61] Dkt. 54 (Lee Affidavit); Dkt. 55 (Ivory Affidavit).

defendant is in a relationship with "Shanyle Ansel", a person and name not familiar to defendant.[62]

Accordingly, Lee argues that without SA Nelson's "deliberately or recklessly false statement, there is not a sufficient nexus to the residence necessary to establish probable cause for a search warrant to issue."[63]

Second, Lee asserts that the search warrant was "overbroad and thus failed to establish probable cause to search the house" because the alleged drug transaction occurred away from the Subject Residence.[64] Specifically, Lee argues that, "(1) **there was no evidence that the bag suspected of containing drugs was ever taken into the garage or house**, (2) there was no evidence that defendant entered the residence and (3) there was no evidence establishing that the garage was connected to the house."[65]

Lee contends that the "search warrant should not have been issued because the alleged drug sale was a [one-time] transaction not closely related to the warrant application."[66] Lee claims that

> the affidavit described a single transaction that occurred over a month before the search warrant application. It did not allege that [Lee] was involved in a continuing pattern of criminal conduct and did not assert that [Lee] was a drug trafficker.
>
> Consequently, it is reasonable to conclude that the information in the affidavit was stale and insufficient to support the conclusion that it was likely that narcotics would be found at [the Subject Residence].[67]

In addition to these two new arguments, Lee also reiterates that the good-faith exception to the exclusionary rule is inapplicable in his case.[68]

The Government opposes the Second Motion, highlighting that the Magistrate Judge previously addressed and subsequently "rejected the substance of several of Lee's arguments" in the Initial R&R, and urging against their reconsideration in the Second Motion.[69] In addressing the merits of the Second Motion, the Government contends that (1) the search warrant was based on probable

---

[62] Dkt. 53 at 3–4.
[63] *Id.* at 4.
[64] *Id.* at 8–10 (citing *United States v. Contreras-Aguilar*, No. 2:20-CR-00092-SMJ-1, 2021 WL 149014 (E.D. Wash. Jan. 15, 2021)).
[65] *Id.* at 7 (emphasis in original).
[66] *Id.* at 10.
[67] *Id.* at 12 (citing *Underwood*, 725 F.3d 1076 (9th Cir. 2013)).
[68] Lee re-asserts substantively similar arguments found in the First Motion, alleging that SA Nelson "knowingly or recklessly misled the [issuing magistrate] judge into believing that [Lee] was in a relationship with 'Shanyle Ansel', and that they lived together." *Id.* at 13.
[69] *Id.* at 1–2.

cause and the affidavit does not "contain any deliberately or recklessly false statements," (2) the search warrant was not "overbroad or based on stale information," and (3) the good-faith exception to the exclusionary rule is applicable here.[70]

First, the Government asserts that Lee should not be permitted to re-litigate the probable cause findings that the Magistrate Judge made in the Initial R&R and to which Lee had already objected.[71] In any event, the Government maintains that the issuing magistrate correctly found probable cause because "the affidavit contained sufficient information to support probable cause to search the entire [Subject Residence] for evidence of Lee's drug trafficking activities."[72]

The Government states that Lee has not alleged a valid *Franks* violation because the disputed statement was "neither deliberately nor recklessly false."[73] The Government asserts that the typographical error of Anselm's name may have been "negligent" but cannot be construed as showing reckless disregard of the truth.[74] Additionally, the Government notes that the affidavit does not specify what type of relationship—romantic, familial, or otherwise—was shared between Anselm and Lee.[75] Further, the Government argues that even "if the affidavit did imply a romantic relationship between Lee and Ms. Anselm, there was a reasonable basis for that conclusion" because (1) Lee and Anselm do not share the same last name, implying that they "are not immediately recognizable as blood-relatives based on their names alone" and (2) Anselm was the listed subscriber for Lee's phone number.[76] The Government highlights that "it is unlikely that someone would pay the cell phone bill of a stranger, acquaintance, or even a mere friend."[77] In light of these considerations, "it was reasonable to suspect that Lee was likely in a close, potentially romantic, relationship with Ms. Anselm and was using her to distance himself from the phone number."[78] As such, "it was not reckless for law enforcement to conclude that Lee cohabitated with a woman, and that the woman was Ms. Anselm."[79]

The Government further argues that "whether Ms. Anselm is in a relationship with Lee or lives with Lee ***was utterly immaterial to the issue of whether there is probable cause*** to believe there would be evidence of drug trafficking at the [Subject Residence]."[80] The Government recounts that law enforcement had "extensively surveilled Lee, who had multiple contacts with a member of a drug trafficking organization, . . . observed Lee conduct two illicit drug transactions, and . . . observed Lee return to the [Subject Residence] after each transaction."[81] Ultimately, according to

---

[70] Dkt. 62 at 1.
[71] *Id.* at 9–10. In the Initial R&R, the Magistrate Judge "concluded that the events described in the affidavit" created a sufficient connection to Lee's residence to justify its search." *Id.* at 10.
[72] *Id.* at 12.
[73] *Id.* at 5–6.
[74] *Id.* at 6.
[75] *Id.*
[76] Id.
[77] *Id.*
[78] *Id.* at 6–7.
[79] *Id.* at 7.
[80] *Id.* at 8 (emphasis added).
[81] *Id.* (citing Dkt. 23 at 25–27).

the Government, the affidavit does not rely on Anselm to support a connection between Lee's alleged narcotics trafficking activities, the Subject Residence, or the Subject Vehicle.[82]

Second, the Government contends that the search warrant was not overbroad. The Government points to thirteen enumerated "categories of evidence which Agent Nelson explained were probative of drug trafficking based on her training and experience."[83] "Because the search warrant was supported by probable cause and provided clear, specific instructions that only certain evidence of drug trafficking could be sought, it was not overbroad."[84]

Third, the Government asserts that the information contained in the affidavit was not stale.[85] Law enforcement observed Lee engage in two alleged drug transactions, and observed him travel to and from the Subject Residence in the Subject Vehicle just one month before the search warrant was issued.[86] The Government argues that "[g]iven the nature of the evidence being sought—documents, currency, distribution paraphernalia, mobile communication devices tending to show drug trafficking activity—there is reason to believe that such evidence would still be present a month after the last observed transaction."[87] For further support, the Government points to SA Nelson's affidavit, which notes that "distribution of controlled substances is frequently a continuing activity over months and years."[88]

Fourth, the Government argues that the good-faith exception is applicable in this case.[89] As explained in its previous filings, there is no indication that SA Nelson "deliberately or recklessly" included "false or misleading information in her affidavit" or that the issuing magistrate demonstrated any indication of biased or non-neutral positioning when reviewing the search warrant and affidavit.[90]

### D. The Franks Hearing and the Parties' Supplemental Authority

On November 15, 2022, the Magistrate Judge held a *Franks* hearing to determine "whether [SA Nelson's] affidavit contained deliberately or recklessly false statements without which probable cause could not have existed."[91] At the hearing, SA Nelson testified regarding her involvement in the Lee investigation and about certain portions of her affidavit.[92] Specifically, SA Nelson gave additional information regarding the typographical error of Anselm's name in paragraph 63 of the

---

[82] *Id.*
[83] *Id.* at 13 (citing Dkt. 23 at 32–33).
[84] *Id.* (citing *United States v. Young*, 420 F.3d 915, 917 (9th Cir. 2005)).
[85] *Id.* at 14.
[86] *Id.* (citing Dkt. 23 at 1, 6–7).
[87] *Id.*
[88] *Id.* at 14–15.
[89] *Id.* at 15–17.
[90] Dkt. 62 at 16; *see also Underwood*, 725 F.3d at 1085 (explaining an affidavit is not "bare bones" when "'thoughtful and competent judges' could disagree that probable cause does not exist").
[91] Dkt. 74; Dkt. 77.
[92] Dkt. 77 at 6–51.

affidavit[93] and the surveillance observations that led law enforcement to conclude that Anselm resided with Lee. On cross-examination, SA Nelson confirmed that she did not take affirmative steps to confirm Anselm's home address through Anselm's DMV or other public records.[94]

On November 22, 2022, the Government filed a Notice of Supplemental Authority, citing case law for the proposition that when alleging a *Franks* violation, Lee must demonstrate both (1) intentional or reckless disregard for the truth and (2) that any such misstatements are material to a probable cause.[95]

On January 13, 2023, Lee filed a response to the Government's Notice of Supplemental Authority, alleging that "recently discovered evidence establishes that [SA Nelson] was aware that the representation in the affidavit stating that [the Subject Vehicle] was consistently present at [the Subject Residence] was false."[96]

### E. The Final R&R

On February 16, 2023, the Magistrate Judge submitted the Final R&R, assessing (1) the Second Motion, (2) the issue of probable cause raised in the First Motion, (3) the applicability of the good-faith exception, and (4) Lee's objections to the Initial R&R.[97]

1. There was no *Franks* violation.

First, the Magistrate Judge assesses the *Franks* violations raised in the Second Motion, assessing the following two statements:

(1) "Shanyle Ansel [sic] appears to live with LEE at the SUBJECT RESIDENCE"; and
(2) "[Anselm] is believed to be in a relationship with [Lee]."[98]

---

[93] *Id.* at 12.
[94] *Id.* at 20.
[95] *See generally* Dkt. 80.
[96] Dkt. 99. The Court declines to consider this allegation because it is without merit. *Id.* at 2. During the *Franks* hearing, SA Nelson acknowledged that Lee was observed by law enforcement "a handful of times." Dkt. 77 at 31. Her affidavit demonstrates that (1) Lee was observed on August 23, 2023, and that (2) surveillance units had previously observed Lee driving the Subject Vehicle and Lee present at the Subject Residence. Dkt. 23 at 25–27. Although Lee, referencing a sealed *ex parte* order at Docket 88, purports that these filings, in sum, show that SA Nelson was not forthright when stating that the Subject Vehicle was "consistently present" at the Subject Residence; the Court does not agree. Instead, the evidence demonstrates that there was a fair probability that Lee was observed on more than one occasion to be consistently at the Subject Residence. Therefore, SA Nelson's statement regarding the "handful of times" law enforcement surveilled Lee was reasonable and neither false nor misleading.
[97] Dkt. 101 at 9.
[98] Dkt. 23 at 27–28.

As for the first statement, the Magistrate Judge concludes that it "was not recklessly false, but nonetheless should not have been presented to the magistrate judge and may have been negligent."[99] The Magistrate Judge notes that the typographical error, writing Shantyle Anselm's name as "Shanyle Ansel," "was not knowingly or recklessly false under the circumstances and does in fact refer to the same person, Ms. Anselm, in the affidavit."[100] The Magistrate Judge reasons that at the *Franks* hearing, "SA Nelson testified to the fact that this was a typographical error on her part" and this explanation is credible "given the uniqueness of the name, that these are the only two names of this type in the entire affidavit, and that the two sentences are consecutive in the affidavit."[101] Therefore, the Magistrate Judge concludes that although the typographical error may have been negligent, it was not knowingly or recklessly false under the circumstances.

Similarly, the Magistrate Judge finds that the assertion that Anselm resided with Lee was neither deliberate nor recklessly false.[102] The Magistrate Judge recognizes that

> [t]his statement can certainly lead the issuing judge to conclude there were activities of [Lee] and [Anselm] that created the appearance that she lived at [Lee's] residence. However, there was no additional information in the record to contradict SA Nelson's information or belief to suggest Ms. Anselm did not in fact live at [Lee's] residence. Such contradictory information could have suggested SA Nelson's statement was deliberate or recklessly false, but such information was clearly lacking in this case.[103]

The Magistrate Judge reasons that SA Nelson relied on the information that she had at hand, that: (1) Anselm was the listed subscriber of Lee's cell phone service; (2) Lee resided at the Subject Residence; and (3) a woman had been observed accompanying Lee to his residence.[104] However, without "facts contradicting this belief," SA Nelson's erroneous assumption does not "amount to reckless inclusion of false statements in her affidavit."[105] Ultimately, SA Nelson's "negligence or good faith mistakes will not invalidate [the] affidavit which on its face establishes probable cause."[106]

As for the second statement, the Magistrate Judge similarly finds that SA Nelson's statement regarding Anselm and Lee's purported relationship was neither deliberate nor recklessly false.[107] The Magistrate Judge first observes that the statement was "sufficiently vague" so as to

---

[99] Dkt. 101 at 13.
[100] *Id.*
[101] *Id.* at 14.
[102] *Id.* at 13.
[103] *Id.* at 15–16.
[104] *Id.* at 16.
[105] *Id.* (citing *United States v. Smith*, 588 F.2d 737, 739–40 (9th Cir. 1978)).
[106] *Id.*; *Smith*, 588 F.2d at 740; *United States v. Astroff*, 578 F.2d 133 (5th Cir. 1978); *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987).
[107] Dkt. 101 at 18.

11

"technically include the truth" because Anselm and Lee are in a "familial relationship."[108] The Magistrate Judge then recognizes that, more importantly, "this statement is immaterial to the ultimate determination of probable cause" and was "not a fact of consequence to show [Lee] was using someone else's phone."[109] Accordingly, the Magistrate Judge recommends the Court find no *Franks* violation.

  2.  The affidavit provided probable cause to justify the search warrant.

Second, the Magistrate Judge finds that the "affidavit provided sufficient information for the [issuing magistrate] to find probable cause to issue the warrant searching the subject vehicle and his residence."[110] The Magistrate Judge reasons that the "combination of [Lee's] activities, chronology of those activities, and the affiant's observations attaching a drug trafficking significance to these activities, sufficiently led to the finding of probable cause."[111]

Specifically, the Magistrate Judge notes that Lee's "connections to the drug trafficking trade were established through his connections with Miller" and that much of the affidavit described "the communication regarding drug dealing activities between McGranahan, Voss, and Miller," establishing that there was probable cause that Miller was a drug supplier, familiar with Lee, and involved in the exchange of illegal drugs.[112]

Further, the "affidavit also makes it clear that Miller was speaking with [Lee] on . . . the same phone [(TT-3)] cited earlier in the affidavit when Miller talked to Voss about specific drug trafficking transactions."[113] The affidavit also shows that Lee used the Subject Vehicle, driving to an Arby's drive-thru and the Walgreens parking lot, where he was observed to be engaging in activities consistent with narcotics activity.[114] The Magistrate Judge notes that although there may be "independent legitimate explanations" for these activities, "an officer's testimony based on their training and experience can be utilized to transform otherwise innocuous actions of a Defendant into participation in illegal drug trafficking."[115]

The Magistrate Judge further states that the "totality of circumstances from the affidavit also sufficiently connects [Lee's] residence with the drug trafficking activities to support the finding of probable cause."[116] Lee's interactions with Miller, and his activities at Arby's and Walgreens, support "the finding of probable cause to search the [Lee's] residence even though [these activities] did not occur at [Lee's] residence."[117]

---

[108] *Id.*
[109] *Id.* at 18–19.
[110] *Id.* at 19.
[111] *Id.*
[112] *Id.* at 19–20.
[113] *Id.*
[114] *Id.* at 21–22.
[115] *Id.* at 22 (citing *United States v. Bullock*, 632 F.3d 1004, 1013 (7th Cir. 2011)).
[116] *Id.* (citing *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989)).
[117] *Id.* at 23.

Ultimately, "[e]ven excising the statement, 'Shanyle Ansel [sic] appears to live with Lee at the subject residence …[,]' aggregating the activities of [Lee] and his vehicle with the chronology of these activities and observations from August 31, created a sufficient connection to [Lee's] residence to justify its search."[118] The Magistrate Judge therefore recommends the Court deny the Motions.[119]

   3. The good-faith exception to the exclusionary rule applies.

The Final R&R also clarifies that, should the Court "disagree that SA Nelson's affidavit presented a substantial basis for finding probable cause," the fruits of the search warrant are still admissible under the good-faith exception.[120] Specifically, the Magistrate Judge rebuts Lee's contention that, under *United States v. Underwood*[121] and *United States v. Hove*,[122] the good-faith exception should not apply because the affidavit was so lacking in indicia of probable cause that good faith reliance upon it was impossible."[123]

The Magistrate Judge states that SA Nelson's affidavit both "makes clear that the residence to be searched was where she believed Lee lived" and "also detail[s] activities undertaken by Lee and observed by law enforcement [leading] SA Nelson to conclude police would find evidence of drug possession with intent to distribute and drug conspiracy where she believed Lee lived."[124] Because the Magistrate Judge found that the alleged inaccuracies in the affidavit "may have been negligent" at most, the Magistrate Judge declines to find that "SA Nelson did not act in good faith when executing her warrant, that she was motivated by any improper means or that the good-faith exclusion should not apply to her."[125]

For these reasons, the Magistrate Judge concludes that the good-faith exception applies to the fruits of this search warrant and that the "evidence resulting from its execution should not be excluded on this basis."[126]

---

[118] *Id.* The Magistrate Judge also explains that Lee's use of *United States v. Underwood* is misplaced. 725 F.3d 1076 (9th Cir. 2013); *id.* at 24 ("In Lee's case, there is a temporal proximity of the drug related activities and the residence that distinguishes this case from the facts Defense relied on in *Underwood*. Here, Lee's communications with Miller, the observed drug related activities at Arby's and Walgreens, and his visit to his residence in-between were on the same day, as opposed to the circumstances in *Underwood*.").
[119] *Id.* at 25.
[120] *Id.*
[121] 725 F.3d 1076 (9th Cir. 2013).
[122] 848 F.2d 137 (9th Cir. 1988).
[123] Dkt. 101 at 25.
[124] *Id.* at 26.
[125] *Id.* at 27.
[126] *Id.* at 28.

13

4. The objections to the Initial R&R do not warrant revision.

In the last section of the Final R&R, the Magistrate Judge responds to Lee's objections to the Initial R&R.[127] The Magistrate Judge first notes that Lee's factual objections prompted four minor changes to the Initial R&R.[128] As for Lee's six legal objections, the Magistrate Judge declines to amend the Final R&R, outlining his reasoning and maintaining his recommendation that the Court deny the Motions.[129]

F. Objections to the Final R&R

In response to the Final R&R, Lee filed two sets of objections.[130] In his objections, Lee argues that: (1) the affidavit suffers from credibility issues and contains recklessly false statements and omissions; (2) the Magistrate Judge lacked a substantial basis for finding that probable cause existed because he relied on false information; (3) the cumulative effect of the false statements and omissions in the affidavit warrants suppression; and (4) the good-faith exception does not apply.[131]

First, Lee argues that because SA Nelson did not search for Anselm's address in certain public databases to determine Anselm's true residence, "SA Nelson's statements were not a mere product of negligence but recklessly false."[132]

Second, Lee argues that the issuing magistrate "lacked a substantial basis for believing probable cause existed because he relied on false information," specifically the information that (1) Anselm and Lee were seen together and (2) Anselm lives with Lee.[133] According to Lee, SA Nelson's testimony suffers from "serious credibility issues" because she inconsistently testified about seeing or identifying Anselm during the investigation.[134]

Third, Lee contends that the affidavit's "cumulative effect of the false statements and omissions warrant suppression," arguing that these "omissions and false statements" were material to the issuing magistrate's approval of the search warrant.[135]

Fourth, Lee reiterates his objection to the good-faith exception, arguing that because "SA Nelson knew that the affidavit contained false statements and reckless omissions," the exception does not apply.[136]

---

[127] See generally Dkt. 50.
[128] *See* Dkt. 50 at 1 (citing Dkt. 46 at 5–19).
[129] *Id.* at 28–34.
[130] Dkt. 109; Dkt. 112.
[131] Although filed in two separate motions, the Court considers these objections together.
[132] Dkt. 109 at 2–3.
[133] *Id.* at 3.
[134] Dkt. 112 at 1–2.
[135] Dkt. 109 at 3–4.
[136] *Id.* at 5.

14

*G. Discussion*

After reviewing the Final R&R, Lee's objections, and the record, the Court concludes that Lee's objections do not merit modification of the Final R&R. Considering the substantively duplicative briefing in this case, the Court shall address three points that cover the breadth of the disputed issues raised in the Motions and Lee's objections: (1) the alleged *Franks* violation; (2) whether the issuing magistrate had probable cause to issue the search warrant; and (3) the applicability of the good-faith exception. In addressing these three disputed areas, the Court is satisfied that it has resolved all five of Lee's outstanding objections to the Final R&R through rigorous *de novo* review.[137]

1. <u>SA Nelson did not commit a *Franks* violation because her errors were neither reckless nor deliberate and were immaterial to the probable cause determination.</u>

In the Second Motion, Lee argues that SA Nelson made three errors amounting to a *Franks* violation, including: (1) a typographical error of Anselm's name, (2) the assertion that Anselm lived with Lee at the Subject Residence, and (3) the belief that Anselm was in a relationship with Lee. Lee claims that these three assertions are deliberately or recklessly false statements that were material and necessary to the issuing magistrate's finding of probable cause.[138] As explained below, the Court disagrees and declines to revise the Final R&R on this basis.

A *Franks* hearing may be held to determine whether an affidavit contains deliberately or recklessly false statements without which probable cause would not have existed.[139] After the hearing, the Court must determine whether any "erroneous statements or omissions" in the search warrant affidavit "were made knowingly and intentionally, or with reckless disregard for the truth."[140] If the Court so finds, it must then determine whether "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause."[141]

First, the Court agrees with the Magistrate Judge that SA Nelson was not reckless when she produced a typographical error in the spelling of Anselm's first and last name, writing "Shanyle Ansel" instead of "Shantyle Anselm."[142] In fact, due to the unique nature of Anselm's name, it appears Lee falls prey to the same type of typographical error in his Second Motion, in at least one instance, spelling Anselm's first name as "Shantle" as opposed to the correct "Shantyle" or the contested typo "Shanyle."[143] Adopting the Magistrate Judge's analysis in the Final R&R, a reasonable person could infer that this was a negligent typographical error, and interpret the

---

[137] *See* 28 U.S.C. § 636(b)(1)(C).
[138] *Franks*, 438 U.S. at 154–55.
[139] *Id.* at 156.
[140] *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998) (quoting *Franks*, 438 U.S. at 155–56).
[141] *Id.*
[142] Dkt. 23 at 27 ¶ 63.
[143] Dkt. 53 at 3 (writing "there is no one by the name **Shantle** Ansel at the residence") (emphasis added).

15

reference as applying to Anselm, as opposed to a new third party. As such, after considering SA Nelson's testimony at the *Franks* hearing, this error was neither reckless nor deliberate.

Second, the Court agrees with the Magistrate Judge that SA Nelson's statements that Anselm was believed to be in a relationship and resided with Lee, were neither deliberately nor recklessly false.[144] The Court agrees with the Final R&R's reasoning—bolstered by SA Nelson's testimony at the *Franks* hearing—that it was neither deliberate nor reckless for SA Nelson to come to these conclusions after relying on the underlying information that: (1) Anselm was the subscriber of Lee's cell phone; (2) Lee resided at the Subject Residence; and (3) a woman had been observed with Lee that could reasonably have been Anselm.[145] All three of these correct observations could have led an investigator to conclude that Lee and Anselm resided together and may have been in some type of relationship. Although SA Nelson did not verify Anselm's residence through public records, the Court declines to invalidate an affidavit which on its face establishes probable cause.[146]

More importantly, however, Lee's alleged *Franks* violation is a red herring because Anselm's role in Lee's alleged narcotics trafficking activities was "immaterial to the ultimate determination of probable cause" and was "not a fact of consequence."[147] The affidavit—through multiple surveillance observations and cell phone communications—offers ample evidence that show a fair probability that Lee was involved in narcotics trafficking. Although Lee attempts to re-litigate this issue in his objections, making various arguments as to why the issuing magistrate must have "lacked a substantial basis for believing probable cause existed," the Court does not find any substance to these claims.[148]

In sum, even though SA Nelson's conclusions regarding Anselm's relationship status and residence were ultimately incorrect, they were certainly neither recklessly nor deliberately false and did not produce any "cumulative effect" to warrant suppression.[149] Accordingly, the Court declines to alter the Final R&R because of this alleged *Franks* violation.

2. <u>The issuing magistrate judge correctly found that probable cause to issue the search warrant existed and that the search warrant was otherwise valid.</u>

In the Motions and objections, Lee alleges that the issuing magistrate lacked probable cause to issue the search warrant of Lee's residence and vehicle.[150] Lee argues that the search warrant was deficient in that it: (1) did not establish the probable cause necessary to indicate that Miller may have been trafficking in narcotics; and (2) relied on stale information. For the foregoing reasons,

---

[144] Dkt. 101 at 13.
[145] *Id.* at 16.
[146] *See id.*; *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978); *United States v. Astroff*, 578 F.2d 133 (5th Cir. 1978); *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987).
[147] Dkt. 101 at 18–19.
[148] Dkt. 109 at 3.
[149] *Id.* at 3–4.
[150] Dkt. 21 at 2–8; Dkt. 53 at 8–12; Dkt. 109 at 3–5; Dkt. 112 at 1–3.

16

the Court finds that the affidavit contained ample information to support probable cause and that this information was not stale; as such, the Court declines to alter the Final R&R.

As explained in *Underwood*:

> A search warrant is supported by probable cause if the issuing judge finds that, "given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."[151] A reviewing court should find that probable cause is not met when the issuing judge lacked a "'substantial basis for ... conclud[ing]' that probable cause existed."[152]

First, the Court agrees with the Magistrate Judge that the "affidavit provided sufficient information for the [issuing] judge to find probable cause to issue the warrant searching the subject vehicle and his residence."[153] The affidavit details SA Nelson's background and experience in investigating narcotics trafficking, along with her observations regarding typical methods and behaviors of traffickers.[154] Relying on intercepted phone calls and communication records, the affidavit also provides sufficient information that Miller was McGranahan and Voss's drug supplier.[155] The affidavit demonstrates that McGranahan and Voss communicated regularly regarding the transaction of narcotics, and that afterwards, Voss routinely called a cell phone to which Miller was the subscriber. The affidavit therefore shows a "fair probability" that Miller was involved in the sale of narcotics as Voss's drug supplier.

The Court also agrees with the Magistrate Judge that the affidavit demonstrates probable cause that Miller was speaking with Lee regarding illicit drugs and that Lee used the Subject Vehicle to engage in activities consistent with narcotics trafficking.[156] While there may exist "independent legitimate explanations" for Miller's communications and activities at the Arby's and Walgreens parking lots, SA Nelson's statements—based on her training and experience—provided context for Lee's actions, leading to a fair probability that Lee was engaged in illegal drug trafficking.[157] Ultimately, the Court concurs that the "totality of circumstances from the affidavit [] sufficiently connects [the Subject Residence and Subject Vehicle] with the drug trafficking activities to support the finding of probable cause."[158]

---

[151] *Underwood*, 725 F.3d at 1081 (quoting *Gates,* 462 U.S. at 238) (internal citation omitted).
[152] *Id.* (quoting *Gates,* 462 U.S. at 238–39) (internal citations omitted).
[153] Dkt. 101 at 19.
[154] Dkt. 23 at 9–17.
[155] *Id.* at 17–24.
[156] Specifically, law enforcement surveillance noted Lee participating in alleged drug transactions during the Arby's drive-thru transaction and at a Walgreens parking lot. Dkt. 101 at 21–22.
[157] *Id.* at 22 (citing *United States v. Bullock*, 632 F.3d 1004, 1013 (7th Cir. 2011)).
[158] *Id.* (citing *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989)). The Court also rejects Lee's contention that the search warrant's instructions to law enforcement was overbroad. Dkt. 53 at 8–10. It appears that Lee employs this objection as another mechanism to raise the issue of probable cause. Although law enforcement did not observe Lee's drug transactions occur at the Subject Residence, the affidavit demonstrates that Lee was involved in narcotics trafficking and

17

Finally, the Court disagrees with Lee's contention that the information underlying the search warrant was stale. Lee asserts that the "affidavit described a single [drug] transaction that occurred over a month before the search warrant application."[159] However, it is clear that the search warrant was issued only after: (1) law enforcement intercepted Miller's communications with Voss and McGranahan, (2) surveillance observed two alleged drug transactions between Lee and Miller, and (3) Lee used the Subject Vehicle to travel back and forth from the Subject Residence.[160] Considering that when it comes to drug trafficking, "probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity," a one-month delay between these observations and the search warrant does not render the affidavit stale.[161] Indeed, SA Nelson stated as much in her affidavit, noting that "distribution of controlled substances is frequently a continuing activity over months and years."[162]

Accordingly, the Court declines to alter the Final R&R based on the issue of probable cause.

   3. Even if probable cause did not exist, the good-faith exception is applicable in this case.

Finally, the Court disagrees with Lee that the good-faith exception does not apply because "SA Nelson knew that the affidavit contained false statements and reckless omissions."[163]

In general, evidence obtained in violation of the Fourth Amendment must be excluded at trial.[164] But under the good-faith exception to this exclusionary rule, evidence seized pursuant to a defective warrant will not be suppressed when an officer acts "in objectively reasonable reliance" on a search warrant, even if it is later determined that the warrant was not supported by probable cause.[165] The good-faith exception does not apply, however, when (1) the affiant knowingly or recklessly misleads the issuing judge with false information; (2) the judge wholly abandons his neutral role; (3) the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid.[166]

First, as discussed in the Final R&R, SA Nelson did not knowingly or recklessly mislead the issuing judge with false information. The incorrect statements made by SA Nelson were not only

---

these activities were sufficiently associated with the Subject Residence and Subject Vehicle. Dkt. 62 at 10 (citing *Damitz*, 495 F.2d at 55 ("[I]n the case of drug dealers, evidence is likely to be found where the dealers live.")). The Court agrees that "[b]ecause the search warrant was supported by probable cause and provided clear, specific instructions that only certain evidence of drug trafficking could be sought, it was not overbroad." *See* Dkt. 62 at 13 (citing *Young*, 420 F.3d at 917).
[159] Dkt. 53 at 12.
[160] Dkt. 62 at 14.
[161] *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).
[162] Dkt. 23 at 10.
[163] Dkt. 109 at 5.
[164] Dkt. 101 at 12 (quoting *Mapp v. Ohio*, 367 U.S. 643, 657 (1961) ("[T]he exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments.")).
[165] *Leon*, 468 U.S. at 922–23; *Underwood*, 725 F.3d at 1085.
[166] *Leon*, 468 U.S. at 923; *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006).

18

minor, but were ultimately irrelevant to a finding of probable cause, making them inappropriate as a basis for Lee's good-faith exception argument.[167] Second, the record is devoid of any evidence that the issuing magistrate abandoned his neutral role when considering the search warrant, nor does Lee assert as much.[168] Third, the affidavit is not so lacking in probable cause that the issuing magistrate's reliance upon it was unreasonable. On the contrary, the affidavit provided multiple reasons why the totality of the circumstances—including the intercepted communications between Miller, Voss, McGranahan and Lee; Lee and Miller's activities at the Arby's drive-thru; Lee's behavior at the Walgreens parking lot; and Lee's use of the Subject Vehicle and visits to the Subject Residence—demonstrated a fair probability that evidence of narcotics trafficking would be found.[169] Finally, the affidavit's demonstration of probable cause makes it impossible to find that the search warrant was in any way facially deficient so that the issuing magistrate could not have reasonably presumed it to be valid. Accordingly, the Court declines to alter the Final R&R.

### H. Conclusion

SA Nelson's affidavit provided sufficient probable cause to support the search warrant and its errors regarding Anselm were negligent and immaterial to this finding of probable cause. Even if probable cause did not exist, however, the good-faith exception would still apply. The Court therefore concludes that Lee's objections do not merit revision of the Final R&R and the Court **ACCEPTS AND ADOPTS** the Final R&R at Docket 101. Consequently, the Motions at Docket 21 and Docket 53 are **DENIED.**

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: May 1, 2023.

---

[167] Dkt. 101 at 12–13 (citing *Leon*, 468 U.S. at 923; *Luong*, 470 F.3d at 902).
[168] *Id.* at 12 (citing *United States v. Peltier,* 422 U.S. 531, 542, (1975)).
[169] *Id.* at 10 (citing *Gates*, 462 U.S. at 238).