# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES RASHID MALIK LEE,<br><br>Defendant. | Case No. 3:21-cr-00117-TMB-SAO<br><br>ORDER ON LEE'S<br>MOTION TO SUPPRESS AND MOTION<br>TO REOPEN DEADLINES<br>(DKTS. 171 & 172) |

## I.     INTRODUCTION

Before the Court are Defendant Charles Rashid Malik Lee's (1) Motion to Suppress and (2) Motion to Reopen Deadlines (collectively the "Motions").[1] In the Motions, Lee claims violations of the Fourth Amendment, Sixth Amendment and *Franks v. Delaware*[2] related to the use and late disclosure of aerial surveillance footage taken on August 31, 2021. The Government opposes the Motions.[3] After granting a four-day continuance of Lee's criminal trial, the Court held a hearing on July 20, 2023, granting Lee's request to re-open the *Franks* evidentiary hearing that had been previously held in November 2022.[4] At the hearing, both parties questioned Special Agent Katherine Nelson, who provided an affidavit in support of the application for the search warrant of Lee's residence and vehicle.[5]  Upon careful review of the record, the parties' briefing

---

[1] Dkt. 171 (Motion to Suppress); Dkt. 172 (Motion to Reopen Deadlines).
[2] 438 U.S. 154 (1978).
[3] Dkt. 175 (Response in Opposition to Motion to Suppress).
[4] Dkt. 77 (November 2022 Evidentiary Hearing Transcript).
[5] The July 20, 2023 hearing was held outside the presence of the jury. Dkt. 165 (Text Order); Dkt. 169 (Transcript of July 19, 2023 Evidentiary Hearing); Dkt. 170 (Minute Entry).

Case 3:21-cr-00117-TMB-SAO   Document 186   Filed 07/24/23   Page 1 of 23

and oral argument, testimony, evidence, and applicable law—and having considered possible alternatives—the Court **DENIES** the Motions.

## II. BACKGROUND

### A. Disclosure of Aerial Footage and Trial Continuance

On Friday, July 14, 2023, law enforcement sent the Government two videos of aerial surveillance of Lee and another surveillance target, captured on August 31, 2021.[6] On Sunday, July 16, 2023, the Government first reviewed the aerial footage during trial preparation and produced it to Lee the same day.[7] The Court learned of the existence of this footage during a sidebar conversation with counsel on the first day of trial—after voir dire, after the jury had been empaneled, and after opening statements.[8] Upon learning this information, the Court dismissed the jury early and directed counsel to take the afternoon and evening to review the aerial footage.[9]

On the following day, at a lunchtime hearing outside the presence of the jury, Lee moved for a mistrial, arguing that he should have had access to the aerial footage before a *Franks* evidentiary hearing that was held in November 2022.[10] In response to Lee's oral motion for a mistrial, the Court directed the parties to file simultaneous briefing on the issue due at 3:30 p.m. that same day, with a 4:30 p.m. hearing to follow. In Lee's supplemental brief, and at both July 18, 2023 hearings, he again moved for a mistrial[11] or, in the alternative, moved to continue the trial as

---

[6] Dkt. 161 at 13 (Transcript of July 18, 2023 Afternoon Hearings).

[7] *Id.*

[8] *See generally* Dkt. 160 (Transcript of July 17, 2023 Sidebar).

[9] *Id.*

[10] After denying Lee's motion for an evidentiary hearing on the first motion to suppress, the Magistrate Judge granted Lee's second motion for an evidentiary hearing on a narrow *Franks* violation allegation. *See* Dkt. 42 (Order Denying Evidentiary Hearing); Dkt. 64 (Minute Order Granting Evidentiary Hearing on *Franks* Issue); Dkt. 77 (Evidentiary Hearing Transcript).

[11] Lee appeared to request a mistrial due to an alleged *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Court also construed his request to seek a mistrial based on "manifest

2

a sanction under Federal Rule of Criminal Procedure ("Rule") 16.[12] The Government opposed both motions.[13] The Court, finding that neither a *Brady* violation nor a Rule 16 violation had occurred, denied Lee's motion for a mistrial but granted him a four-day continuance of trial so he could examine the recently discovered aerial footage; the Court also granted Lee the opportunity to re-open the *Franks* evidentiary hearing by re-examining Special Agent Nelson before re-commencing trial.[14]

### B. Re-Opening the **Franks** *Evidentiary Hearing*

On July 19, 2023, Lee filed two notices, informing the Court that he wished to re-open the *Franks* hearing based on the disclosure of the aerial footage and requesting Special Agent Nelson be present for questioning.[15] In response, the Government filed a memorandum requesting the Court ensure that the re-opened hearing focus on the narrow scope of the previous *Franks* hearing, which was meant to "investigate the veracity of the affiant," Special Agent Nelson.[16] The Government reminded the Court that at the previous *Franks* hearing, Lee "only contended that the following sentence in the search warrant affidavit was deliberately or recklessly false: 'Based on surveillance observations, Shanyle Ansel [sic] appears to live with LEE at the SUBJECT RESIDENCE and is believed to be in a relationship with him.'"[17] The Government concluded that

---

necessity". *See Arizona v. Washington*, 434 U.S. 497, 505–511 (1978); *United States v. Bates*, 917 F.2d 388, 394–95 (9th Cir. 1990).

[12] *See* Dkt. 161 at 2–3; Dkt. 156 (Motion for a Continuance Based on New Evidence).

[13] *See* Dkt. 155 (Government Memorandum).

[14] On the following day, the Court issued a written ruling. *See* Dkt. 163 (Order Denying Motion for Mistrial and Granting Motion for Continuance).

[15] *See generally* Dkt 162 (Notice); Dkt. 164 (Notice).

[16] *See* Dkt. 166 at 2 (Government Memorandum) (quoting *United States v. Dozier*, 844 F.2d 701, 704 (9th Cir. 1988)).

[17] Dkt. 166 at 2 (quoting Dkt. 53 at 3). After *de novo* review of the Magistrate Judge's Final Report and Recommendation on the matter, the Court previously ruled that, although the two assertions in this sentence were erroneous, they did not rise to the level of a *Franks* violation because they

it did "not anticipate the aerial footage [would] in any way disturb the Court's prior ruling on these points," asserting that Lee had yet to make any offer of proof specifying how the aerial footage indicated that Special Agent Nelson deliberately or recklessly included falsehoods in her affidavit.[18]

The Court, construing Lee's two Notices to re-open the *Franks* inquiry as a Motion,[19] granted Lee's request and held a new *Franks* hearing on July 20, 2023.[20] The Court also instructed the parties as to the scope of the hearing, which focused on: (1) "what, if any, knowledge [Special Agent Nelson] has of the aerial surveillance" and (2) whether Special Agent Nelson had used the aerial footage as a source of information to produce the search warrant affidavit.[21]

At the start of the hearing, the Government clarified that the aerial footage was taken by "an aircraft operated by FBI civilian law enforcement agency, not the military."[22] The parties then examined Special Agent Nelson.[23] In her testimony, Special Agent Nelson stated that at the time she drafted the search warrant affidavit for Lee's residence and vehicle, she was aware that there was aerial footage of Lee, but had not reviewed it, nor was she aware if anyone on her team had reviewed it.[24] Instead, Special Agent Nelson stated that she had primarily "relied on the 302 documentation [(agent surveillance reports)]" which included information from her "own personal observations on surveillance," "discussions that [she] had with [her] team, and information that

---

were neither deliberate nor reckless falsehoods and were not material to the warrant's probable cause determination. *See* Dkt. 117 at 15–16 (Order Accepting and Adopting R&R).

[18] *See* Dkt. 166 at 3.
[19] Dkt. 162; Dkt. 164.
[20] Dkt. 169.
[21] *Id.* at 6–9.
[22] *Id.* at 5; *see also id.* at 14–15.
[23] *Id.* at 13–38.
[24] *Id.* at 27–29.

[their] analysts may have gathered as well."[25] Specifically, Special Agent Nelson stated that she

relied on a 302 report prepared by Task Force Officer ("TFO") Alan Skaggs.[26] After reviewing this

302 report while on the stand, Special Agent Nelson stated that, while she did "not see aerial

surveillance specifically mentioned [in it] . . . one of [the FBI's] camera operators [was] listed as

a participant, and so therefore [she] would [have been] aware that aerial surveillance was used that

day."[27] She further stated that it was "possible that TFO Skaggs had information in that 302 [report]

that was relayed from the aerial surveillance that day," but that "she didn't know for sure" what

materials he was relying on in drafting the 302 report.[28]

Later that day,[29] Lee filed the Motions.[30] On the following day, the Government filed its

opposition.[31]

### C. *Lee's Motions*

In his newly filed Motion to Suppress,[32] Lee argues that there are three reasons why the

Government's delayed disclosure of aerial surveillance footage warrants suppression of the

evidence recovered in the search of Lee's residence and vehicle: (1) the disclosure violates his

---

[25] *Id.* at 21–22. Special Agent Nelson later stated that approximately eight people were involved in the surveillance operation, some of those members "on the ground" and some "would have been on [their] aerial surveillance." *Id.* at 32.

[26] *Id.* at 22–24, 29. This report was entered as a trial exhibit and used to verify which document she used to prepare the affidavit. *See* Dkt. 168-1 (Skaggs 302 Report).

[27] Dkt. 169 at 30. Special Agent Nelson clarified that this operator was "intelligence analyst Shannon Moore." *See id.* at 31.

[28] *Id.* at 29–30, 35–36.

[29] The Court gave Lee a 5:00 p.m. deadline to submit any type of motion to the Court, to which the Government was directed to respond by 12:00 p.m. on the following day, July 21, 2023. This schedule would allow the Court to consider the motions before the resumption of trial on Monday, July 24, 2023. *Id.* at 10–11; *see also* Dkt. 172 (Minute Entry).

[30] Dkt. 171; Dkt. 172.

[31] Dkt. 175.

[32] This is Lee's third motion to suppress, he previously submitted two motions to suppress before trial. *See* Dkt. 21 (First Motion to Suppress); Dkt. 53 (Second Motion to Suppress).

right to privacy under the Fourth Amendment of the United States Constitution; (2) the Government "arbitrarily deprived [Lee] of testimony that was relevant, material[,] and vital to his defense," thus violating his rights under the Sixth Amendment of the United States Constitution; and (3) the Government's "failure to inform the Magistrate Judge how [the Government] gathered the evidence against [Lee]" and failure to "allow him to independently evaluate whether to issue a warrant" is a *Franks* violation that warrants suppression.[33] In his Motion to Reopen Deadlines, Lee contends that there is good cause to extend the motions deadline to expand upon his third motion to suppress.[34]

The Government opposes the Motion on three grounds: (1) "[t]he aerial surveillance in this case was not a "search" governed by the Fourth Amendment"; (2) "[t]he delayed disclosure of the aerial footage did not violate [Lee's] Sixth Amendment rights because it was not material and favorable to the defense"; and (3) "[d]etails about aerial surveillance were not necessary to the finding of probable cause, and thus immaterial pursuant to *Franks*."[35]

## III.    LEGAL STANDARD

### A.  *Fourth Amendment: Reasonable Expectation of Privacy*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.[36] "The scope of those constitutionally protected areas is rooted in the protection of private property rights."[37] The Fourth

---

[33] *See generally* Dkt. 171; *see also Franks v. Delaware*, 438 U.S. 154 (1978).
[34] *See generally* Dkt. 172. The Court construes the Motion to Reopen Deadlines as a motion for reconsideration of its Order Denying Motion for Mistrial and Granting Motion for Continuance at Docket 163, as discussed further herein.
[35] Dkt. 175 at 2.
[36] U.S. Const. amend. IV.
[37] *United States v. Perea-Ray*, 680 F.3d 1179, 1185 (9th Cir. 2012) (citing *United States v. Jones*, 132 S. Ct. 945, 949 (2012)).

Amendment protects persons against unreasonable searches in places outside the home where they have a "reasonable expectation of privacy."[38] The curtilage of the home—"the area to which extends the intimate activity associated with the sanctity of a [person's] home and the privacies of life"—is such a place.[39] The area "immediately surrounding and associated with the home," such as the area "just outside the front window," is considered curtilage.[40] "Warrantless trespasses by the government into the home or its curtilage are Fourth Amendment searches," which are reasonable only if they fall within an exception to the warrant requirement."[41]

Beyond this, the inquiry into whether an area is curtilage involves consideration of four non-exhaustive factors: (1) proximity to the home; (2) whether an enclosure surrounding the home includes the area; (3) the nature of the homeowner's use of the area; and (4) steps taken to protect the area from the observation of passersby.[42] "While combining these factors does not produce a finely tuned formula that, when mechanically applied, yields a correct answer to all extent-of-curtilage questions, the factors are useful in determining the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection."[43]

## B. Sixth Amendment: Compulsory Process for Obtaining Witnesses

The Sixth Amendment to the United States Constitution states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . . be

---

[38] *Id.* (quoting *Jones*, 132 S. Ct. at 950).
[39] *Oliver v. United States*, 466 U.S. 170, 180 (1984) (internal citations and quotation marks omitted).
[40] *Florida v. Jardines*, 133 S. Ct. 1409, 1414–15 (2013).
[41] *Perea-Rey*, 680 F.3d at 1185 (citing *Jones*, 132 S. Ct. at 950 n.3); *see also Katz v. United States*, 389 U.S. 347, 357 (1967).
[42] *United States v. Dunn*, 480 U.S. 294, 301 (1987).
[43] *United States v. Duenas*, 691 F.3d 1070, 1081 (9th Cir. 2012).

7

confronted with the witnesses against him" and have "compulsory process for obtaining witnesses in his favor."[44] The right to compulsory process provides "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary."[45]

### C. Franks *Hearing*

A *Franks* hearing is invoked if the Magistrate Judge that issued a search warrant reached a probable cause determination that may have rested on false or misleading information.[46] If an affiant's "allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence" at a *Franks* hearing, "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."[47]

The first *Franks* step requires that a defendant show that the affiant intentionally or recklessly made misleading statements or omissions.[48] In the context of omissions, "[b]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw."[49] To do so would "effectively usurp . . . the magistrate's duty to conduct an independent evaluation of

---

[44] U.S. Const. amend. VI.
[45] *Washington v. Texas*, 388 U.S. 14, 18–19 (1967).
[46] *Franks v. Delaware*, 438 U.S. 154 (1978).
[47] *Id.* at 156.
[48] *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017).
[49] *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), amended by 769 F.2d 1410 (9th Cir. 1985).

8

probable cause."[50] However, an affiant's "negligent or innocent mistake does not warrant suppression."[51]

The second *Franks* step requires that a defendant show that the misleading statement or omission was material, or in other words, necessary to the probable cause determination.[52] The "key inquiry is whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions."[53] An omission or misstatement is material if it would "cast doubt on the existence of probable cause."[54]

*Franks* instructs that the affiant must demonstrate that they are "truthful," and defines the term for the purposes of its inquiry:

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.[55]

### D. Manifest Necessity Standard for a Mistrial

"[A] trial can be discontinued when particular circumstances **manifest a necessity** for so doing, and when failure to discontinue would defeat the ends of justice."[56] "A trial judge properly

---

[50] *Perkins*, 850 F.3d at 1118; *see also United States v. Johns*, 948 F.2d 1131, 1133 (9th Cir. 1988) (omitting facts that cast doubt on the existence of probable cause makes such omissions material); *United States v. Flores*, 679 F.2d 173, 177 n.1 (9th Cir. 1982) ("A magistrate cannot adequately determine the existence of probable cause with the requisite judicial neutrality and independence if the police provide him or her with a false, misleading, or partial statement of the relevant facts.").

[51] *Perkins*, 850 F.3d at 1116.

[52] *Id.* at 1119.

[53] *Id.* (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)) (internal quotations omitted).

[54] *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 435 (9th Cir. 2010) (quoting *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992)).

[55] *Franks*, 438 U.S. at 164–65.

[56] *Wade v. Hunter*, 336 U.S. 684 (1949) (emphasis added).

9

exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an **obvious procedural error** in the trial."[57] "A trial judge's decision to declare a mistrial" is 'accorded great deference.'"[58]

Nevertheless, a trial judge must exercise his discretion to declare a mistrial in accordance with four requirements. Namely, the trial judge must

> (1) hear[] the opinions of the parties about the propriety of the mistrial, (2) consider[] the alternatives to a mistrial and cho[ose] the alternative least harmful to a defendant's rights, (3) act[] deliberately instead of abruptly, and (4) properly determine[] that the defendant would benefit from the declaration of mistrial[.][59]

Notably, it is improper to permit retrial when "no reversible error has occurred at the time of mistrial [because retrial would] defeat[] the purposes of the [double jeopardy] clause."[60]

## IV.    DISCUSSION

### A.    *The Aerial Footage Did Not Violate Lee's Fourth Amendment Rights*

In Lee's Motion to Suppress, he argues that the Government violated his Fourth Amendment right to a reasonable expectation of privacy when law enforcement employed aerial surveillance of Lee's front yard, driveway, and backyard. Lee contends that the "area where Mr. Lee parked his car and was video recorded is intimately attached to his house" because it is "right outside the garage," and thus forms a part of the "curtilage" where Lee has a constitutionally protected reasonable expectation of privacy.[61] Lee also asserts that because the Government did not obtain a warrant before deploying this aerial surveillance, and the wide-angle lens of the

---

[57] *Illinois v. Somerville*, 410 U.S. 458 (1973) (emphasis added).
[58] *Arizona v. Washington*, 434 U.S. 497, 511 (1978).
[59] *United States v. Bates*, 917 F.2d 388, 394–95 (9th Cir. 1990).
[60] *Id.* (holding that trial court abused its discretion when it granted a mistrial *sua sponte* during defendants' first trial and double jeopardy barred retrial).
[61] Dkt. 171 at 4–5.

footage does not expose any "on the ground" surveillance agents, the search warrant in this case is not based on reliable information and is a violation of Lee's Fourth Amendment rights requiring suppression.[62]

The Government opposes the Motion to Suppress for two reasons. First, the Government alleges that Lee's third motion to suppress is untimely, stating that on January 26, 2022, "the Government provided [Lee] with aerial surveillance footage including flyovers of his residence" taken on separate occasions in September and October 2021.[63] The Government asserts that Lee "had adequate time to challenge any [F]ourth [A]mendment concerns based on warrantless aerial surveillance prior to the commencement of trial."[64]

Second, the Government contends that Lee has no reasonable expectation of privacy in his driveway because "there is no reasonable expectation of privacy in a driveway that is viewable from the street with no evidence that the driveway had fences, gates, signs, or other manifestations that it was not open for public use to contact the residents."[65] The Government also highlights that the United States Supreme Court has "explicitly ruled that aerial observations in public navigable airspace in a physically nonintrusive manner do not infringe on a reasonable expectation of

---

[62] *Id.* Lee appears to argue that the Court may not consider the 302 reports as reliable evidence because they are inadmissible hearsay. In doing so, Lee states that *United States v. Orozco*, supports this conclusion. 590 F.2d 789, 794 (9th Cir. 1979). This case, however, is inapposite. In *Orozco*, the Ninth Circuit allowed certain data cards to be admissible as "public records" and recited a treatise outlining why contemporaneous law enforcement reports were inadmissible as trial evidence. Here, in contrast, the Government is not seeking to admit any contemporaneous reports as evidence to the jury, instead it sought to verify the report on which Special Agent Nelson relied to create her affidavit.

[63] Dkt. 175 at 4.

[64] *Id.* at 5.

[65] *Id.* (citing *United States v. Humphries*, 636 F.2d 1172 (9th Cir. 1980); *United States v. Depew*, 8 F.3d 1424 (9th Cir. 1993); *United States v. Dobbs*, 357 Fed. Appx. 767 (9th Cir. 2009); *United States v. Magana*, 512 F.2d 1169 (9th Cir. 1975); *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010)).

11

privacy."[66] Because, according to the Government, the aerial surveillance of Lee "involved observations of [Lee] in public places where [he] had no reasonable expectation of privacy[,] [t]he government's use of an airplane to assist with surveillance did not convert law enforcement's observations into a search for Fourth Amendment purposes."[67]

After reviewing the aerial footage, briefing, and applicable law, the Court finds that the Government did not violate Lee's constitutional rights during its aerial surveillance. Recognizing that Lee has a reasonable expectation of privacy while at home or in the curtilage of his home, there is no evidence establishing that the Government encroached on these protected spaces in an impermissible manner.

In *Soderlind v. Haigh*,[68] the Ninth Circuit affirmed the district court's holding that Soderlind's driveway was not a part of his residence's curtilage because the driveway was exposed to public view and used for storage and other non-private activities. Similarly, in *United States v. Humphries*, the Ninth Circuit held that law enforcement had not violated Humphries' reasonable expectation of privacy when law enforcement entered his driveway to identify his license plate, reasoning that this was because Humphries' car was visible from the street and did not appear to be "enclosed by a fence, shrubbery, or other barrier."[69] Lee's driveway was likewise not enclosed by fence or shrubbery or any other type of visible barrier. The aerial surveillance of Lee's movement to and from the driveway to his garage thus does not violate his reasonable expectation of privacy and does not violate his Fourth Amendment rights.

---

[66] *Id.* (citing *Dow Chem. Co. v. United States*, 476 U.S. 227 (1986); *Kyllo v. United States*, 533 U.S. 27 (2001)).
[67] *Id.* at 6.
[68] 787 F. App'x 426, 428 (9th Cir. 2019).
[69] 636 F.2d at 1179; *see also Dobbs*, 357 Fed. App'x at 769.

Further, the Supreme Court has confirmed that aerial photographs in navigable airspace is not a search prohibited by the Fourth Amendment.[70] Considering the aerial footage of Lee's home does not indicate the use of any technology that can uncover details of a private home that previously "could not otherwise have been obtained without physical intrusion into a constitutionally protected area,"[71] the Government's aerial surveillance does not violate Lee's constitutional rights so as to suppress the fruits of the search warrant of his home and vehicle.

Moreover, the Court is troubled by the implications of the Government's assertion that, in late January 2022, it disclosed aerial surveillance footages to Lee, which included various "flyovers of [Lee's] residence."[72] This indicates that Lee had approximately two months to raise this Fourth Amendment issue with the Court before his first motion to suppress, and approximately seven months to include this claim in his second motion to suppress.[73] For these reasons, the Court **DENIES** this portion of Lee's Motion to Suppress.

---

[70] *See Dow Chem. Co.*, 476 U.S. at 239; *Florida v. Riley*, 488 U.S. 445 (1989) (holding that law enforcement may make warrantless aerial helicopter observations of activities within a greenhouse which was exposed to public view because it had a partially opened roof); *California v. Ciraolo*, 476 U.S. 207, 215 (1986) (warrantless "naked eye" observation from helicopter of a fenced-in backyard within the curtilage of home did not constitute a Fourth Amendment search).

[71] *See Kyllo v. United States*, 533 U.S. 27 (2001).

[72] Dkt. 175 at 4–5.

[73] *See* Dkt. 21; Dkt. 53. The day after the Court's expedited briefing schedule expired, Lee filed an additional "Notice of Incomplete Discovery" at Docket 179. In this Notice, Lee states that *Leaders of a Beautiful Struggle v. Baltimore Police Dep't* indicates that the Government had not provided complete discovery to Lee regarding its aerial tracking program. 2 F.4th 330 (4th Cir. 2021). In *Leaders of a Beautiful Struggle*, the Fourth Circuit found that the district court erred in denying a preliminary injunction to stop a mass aerial surveillance program in Baltimore. While Lee may have concerns regarding FBI overreaching surveillance programs, this is an issue that he should have raised upon receiving the aerial footage from the Government in January 2022. Because this case is not binding on the Court and because Lee's claim is untimely, the Court declines to entertain it here.

13

### B. The Government's Late Disclosure Did Not Violate Lee's Sixth Amendment Rights

Next, the Court assesses Lee's argument that the Government deprived him of testimony that was relevant, material, and vital to his defense. Under *Brady* and its progeny, "[t]he prosecutor . . . [may be] required to . . . disclose evidence favorable to the accused [when], if suppressed, [that evidence] would deprive the defendant of a fair trial."[74] Therefore, when the Government has withheld evidence favorable to the defendant, the Court must ask whether such evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[75]

Lee contends that at the November 2022 *Franks* hearing he specifically requested that all surveillance footage be produced,[76] to which the Government "promised the court that they would inquire and produce search evidence."[77] Lee argues that because "it can reasonably be concluded that the government team knew about the surveillance footage that was not discovered[,] [t]he collective knowledge doctrine applies to officers working together 'in an investigation.'"[78] According to Lee, because the Government "was aware that they had not produced the evidence

---

[74] *United States v. Bagley*, 473 U.S. 667, 675–76 (1985).

[75] *Strickler v. Greene*, 527 U.S. 263, 290 (1999).

[76] The Court observes that although Lee submitted an excerpt of the transcript from the *Franks* hearing to support this characterization of his request, the transcript does not show that Lee clearly requested surveillance footage, in particular, at the *Franks* hearing. *See* Dkt. 77 at 79 (requesting "agent observations[,] . . . reports[,] . . . [a]nd notes" pertaining to law enforcement's surveillance of Lee), 83–84 (explaining that Lee "just want[ed] to make sure that . . . we have notes [of information from other agents], and if it's just handwritten notes or something"); *see also* Dkt. 173 (Supplement to Motion to Suppress).

[77] Dkt. 171 at 6.

[78] *Id.* Lee explains that the "collective knowledge doctrine" "allows courts to impute police officers' collective knowledge to the officer conducting a stop, search, or arrest. It generally applies in two situations. The first is 'where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned.' . . . The second occurs 'where an officer . . . with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion . . . directs or requests that another officer . . . conduct a stop, search or arrest.'" Lee cites *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007), and *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2009)).

14

central to [Lee] litigating his case," the Government acted intentionally and violated Lee's Sixth Amendment right to a fair trial.[79]

The Government opposes, stating the "Supreme Court has explained 'the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses,' but only 'witnesses in his favor.'"[80] Recognizing this, the Government contends that Lee "cannot establish a violation of his compulsory process right unless he 'make[s] some plausible showing' of how the potential witness's 'testimony would have been *both material and favorable* to his defense.'"[81]

Here, the Court agrees with the Government; Lee has not plausibly alleged that the aerial footage of his movements between an Arby's parking lot, a Walmart parking lot, a Walgreens parking lot, and his home, or any derivative witnesses related to this surveillance, may be "material and favorable" to his defense. Indeed, the Court has excluded this footage from trial, it was not used in the Government's case-in-chief, and the Court continues to observe that while this footage appears to corroborate the search warrant affidavit, it does not move the needle either way. The Court notes that, if anything, the aerial footage appears to be inculpatory in that it substantiates law enforcement agents' on-the-ground observations of Lee's movements. Specifically, the footage mirrors the testimony given by Special Agent Nelson, which provided the basis for the search warrant's probable cause. Lee has not described and the Court cannot see a way to construe the aerial footage as favorable to him, let alone as exculpatory. The Court therefore finds that the evidence was neither material nor favorable to Lee. Therefore, although such a late disclosure was

---

[79] Dkt. 171 at 6–7.
[80] Dkt. 175 at 6 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982))
[81] *Id.* (quoting *Soo Park v. Thompson*, 851 F.3d 910, 919 (9th Cir. 2017) (emphasis added)).

problematic in this case and has led to significant delay in this trial, it does not threaten Lee's constitutional right to a fair trial.[82]

Accordingly, the Court **DENIES** this portion of Lee's Motion to Suppress.

### C. Franks *Issue*

Lee also contends that the Court should find that Special Agent Nelson committed a *Franks* violation which would invalidate the search warrant at issue and suppress all evidence collected during its execution. Specifically, Lee states that the Government's

> failure to disclose how they gathered information against Mr. Lee and that it was done without a warrant using a drone or camera affixed to plane was not a mistake. Agent Nelson testified that she was aware that the government regularly used drones and the based on the collective knowledge doctrine the government cannot argue that they did not know that a drone or plane was used.[83]

The Government opposes, stating that "the fact that the FBI used aerial surveillance during the operation was immaterial to the [issuing] Magistrate Judge's probable cause finding."[84] Further, the Government argues that, considering this aerial surveillance does not run afoul of the Fourth Amendment, the issuing "Magistrate Judge would not have had a basis to deny the warrant merely because some of the observations may have been derived from aerial surveillance."[85] While the Government agrees that "it is undisputed that Agent Nelson was aware that the FBI had aerial surveillance capabilities at the time she authored the affidavit in this case," it contends that Lee "did not establish that [Special Agent Nelson] knew whether the specific observations contained in her affidavit or the surveillance report on which she relied were derived from aerial surveillance

---

[82] The Court further observes that given Lee's access to aerial footage in January 2022, the multiple continuances, and the re-opened evidentiary hearing on this matter, Lee had ample opportunity to raise this issue yet only did so for the first time in these Motions.
[83] Dkt. 171 at 7.
[84] Dkt. 175 at 8.
[85] *Id.*

or agents on the ground."[86] Nevertheless, the Government concludes that because "the use of aerial surveillance was immaterial to the probable cause finding," it is not a valid basis to suppress any evidence.[87]

After reviewing the testimony given at the July 20, 2023 evidentiary hearing and the subsequent briefing, the Court agrees that Special Agent Nelson was aware of the aerial surveillance program used by the FBI, and, although she did not review or rely on the aerial footage when drafting the affidavit, she was also aware that aerial surveillance had occurred specific to the investigation of Lee. However, the Court finds that her mere awareness as to the existence of the aerial surveillance does not rise to a *Franks* violation.

The previous *Franks* inquiry in this case centered around whether the sentence—"Based on surveillance observations, Shanyle Ansel [sic] appears to live with LEE at the SUBJECT RESIDENCE and is believed to be in a relationship with him"—was deliberately or recklessly false.[88] In extensive discussion, and after exhaustive briefing, the Court found that this disputed line immaterial to the issuing Magistrate's finding of probable cause and, *even if stricken from the affidavit*, the search warrant would be supported by probable cause. The Court determined that there was no indication whatsoever that Special Agent Nelson deliberately or recklessly inserted a falsehood into her affidavit, the typo of the name "Shanyle Ansel" was negligent and Special Agent Nelson's incorrect belief that "Ansel" was living with Lee at the subject residence was also merely negligent.[89]

---

[86] *Id*.
[87] *Id.*
[88] *See* Dkt. 23 at 7 (Sealed Exhibit).
[89] For extensive discussion on this issue and the motions to suppress in general, *see* the Court's Order at Docket 117 which adopted and accepted the Magistrate Judge's Report and Recommendation at Docket 101.

Considering the narrow scope of this inquiry, and after reviewing Special Agent Nelson's July 20, 2023 testimony, the Court declines to alter its previous position regarding Lee's *Franks* violation allegation. It is clear that Special Agent Nelson's failure to disclose her awareness of the existence of aerial footage is not germane to this disputed line in the search warrant affidavit. However, even if the Court were to consider Lee's Motion to Reopen Deadlines as a *new* Franks violation allegation—construing Lee's motion to allege that, based on Special Agent Nelson's awareness of the general use of aerial surveillance when drafting her search warrant, her omission was a reckless or deliberate falsehood—such an allegation also fails.

In her testimony, Special Agent Nelson stated that approximately eight people were involved in the surveillance operation, some of those members were "on the ground" and some "would have been on [their] aerial surveillance." *Id.* at 32. She asserted that she drafted her affidavit by relying on her own personal observations during surveillance as well as by considering a 302 report from TFO Skaggs, which included a summary of the notes of all members that participated in the surveillance that day.[90] Recognizing that the aerial footage closely aligns with Special Agent Nelson's affidavit, which in turn was based on these 302 reports, the Court declines any suggestion that had mention of the aerial footage been included in the search warrant, the contents of the affidavit would have been rendered insufficient to establish probable cause. In fact it is more likely the opposite would have been true: had the aerial footage been included in the affidavit, the warrant's probable cause would likely have been further bolstered by this addition.[91] Because Special Agent Nelson's failure to disclose the aerial footage does not indicate by a

---

[90] Dkt. 169 at 22–24, 29; *see* Dkt. 168-1.

[91] Lee does not contend that this footage conflicts with any assertion included in Special Agent Nelson's affidavit. In fact, in his Motion to Reopen Deadlines, he summarizes the footage, which is a summary that closely aligns with the observations included in the search warrant to search Lee's residence and car. *See* Dkt. 172 at 1–2.

preponderance of the evidence that she deliberately or recklessly included a falsehood in her affidavit, the Court **DENIES** Lee's request for suppression based on a *Franks* violation.

### D. The Court Declines to Extend the Motions Deadline

In Lee's Motion to Reopen Deadlines at Docket 172, he contends that the four-day trial continuance and expedited briefing schedule set by the Court violates "his due process rights" due to his "limited time to research, review and analyze discovery."[92] However, any extension to the briefing schedule on Lee's Motion to Suppress at this stage of the trial would act as a constructive mistrial. The jury has already been empaneled and finished hearing the Government's case-in-chief; the Court cannot indefinitely hold the jury while the parties litigate a third motion to suppress. The Court shall therefore construe this Motion to Reopen Deadlines as a motion to reconsider the Court's decision to deny Lee's Motion for a Mistrial.[93]

A motion to reconsider is an "extraordinary remedy, to be used sparingly and in the interests of finality and conservation of judicial resources."[94] Under Local Criminal Rule 47.1(g)(1), the Court "will ordinarily deny a motion for reconsideration absent a showing of one of the following: [A] manifest error of the law or fact; [B] discovery of new material facts not previously available; or [C] intervening change in the law."[95] Because the Court held an evidentiary hearing with new

---

[92] *Id.* at 2.
[93] *See* Dkt. 163.
[94] *Big State Logistics, Inc. v. Gov't Servs. Corp.*, No. 4:13-cv-00029, 2014 WL 12526313, at *1 (D. Alaska March 28, 2014); *See Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).
[95] L.Crim.R. 47.1(g)(1).

testimony from Special Agent Nelson, the Court shall determine whether there are any new material facts that may have altered the Court's previous legal analysis.

Lee argues that he has been unable to "fully challenge the search warrant issued for the search" of his residence and vehicle because he lacks sufficient information "establishing how the [G]overnment gathered the information provided to the magistrate judge to secure the search warrant."[96] Lee also argues that he was unable to "meaningfully and fully challenge" Special Agent Nelson's credibility during the reopened *Franks* hearing.[97] Lee concludes that the expedited briefing schedule imposed by the Court, established in order to preserve Lee's ongoing trial, "impinges on his due process rights and is unfair."[98]

Because Lee requests more time to challenge the search warrant and its basis of probable cause during the middle of trial, essentially requesting that the Court declare a mistrial, the Court again assesses whether Lee has demonstrated that there is a "manifest necessity" to discontinue the trial and shown that the Court's failure to do so would "defeat the ends of justice."[99]

Acting in accordance with the four factors provided in *United States v. Bates*,[100] when Lee first made an oral motion for a mistrial, on the second day of trial, the Court gave defense counsel and the Government multiple opportunities to explain their positions, both in writing and orally. In the Court's Order Denying Lee's Motion for a Mistrial, the Court concluded that the Government had not violated *Brady* and that there was no obvious procedural error that would indicate a "patently clear" reversal on appeal.[101] Since then, despite several requests, Lee has not

---

[96] Dkt. 172 at 2.
[97] *Id.* at 3.
[98] *Id.*
[99] *Wade v. Hunter*, 336 U.S. 684 (1949).
[100] 917 F.2d 388, 394-95 (9th Cir. 1990).
[101] The Court notes, again, that the disclosed footage closely mirrors the statements made on the search warrant affidavit. Lee has not ever alleged that this footage is exculpatory, and the Court

demonstrated to the Court that it erred in this analysis. Nevertheless, the Court sought to lessen the impact experienced by defense counsel by offering alternatives to a mistrial: (1) granting a 4-day continuance, (2) providing an opportunity to examine Special Agent Nelson, and (3) prohibiting the Government's use of the aerial footage at trial.[102]

In a supplement to his Motions, Lee shows that at the November 2022 *Franks* hearing, he had requested the additional notes and reports from the "number of agents and law enforcement making surveillance in this case."[103] In response, counsel for the Government stated that he "believed [the Government had] given defense all the discovery that they're entitled to" and that he did "not know of any reports that would detail every member of the surveillance team's observations[,]" but would inquire with Special Agent Nelson.

After review of the transcripts, the Court finds that Special Agent Nelson did not withhold the aerial footage, either intentionally or otherwise, from Lee or the Court in a manner that prejudiced Lee or violated his constitutional rights. First, Special Agent Nelson averred that, despite knowing of the existence of an aerial surveillance operation, she had neither relied on, nor viewed, the aerial footage. Instead, she reviewed and relied on her own knowledge of the surveillance and the 302 reports provided to her from the other people in the operation. Second, at the November 2022 *Franks* hearing, Special Agent Nelson stated that she would provide exactly

---

has previously stated that, while it does not "see how it moves the needle either way," the footage may prove to be more likely than not inculpatory. Dkt. 169 at 7.

[102] *See* Dkt. 163. The Government asserts that it never intended to use this aerial footage as evidence and did not do so during the presentation of its case-in-chief.

[103] Dkt. 173 at 2–3.

what defense counsel requested of her, which were additional reports created by the surveillance team.[104] There is no indication from Lee that Special Agent Nelson failed to produce such notes.

Although the Court recognizes that this may have been an appropriate time for Special Agent Nelson to mention the existence of aerial surveillance, it is important to note that this footage did not play a part in her creation of the affidavit. As discussed above, her failure to disclose was not a material misrepresentation that would have degraded the probable cause of the search warrant in question.

Returning to the question of whether Lee has satisfied the "manifest necessity" standard to warrant a mistrial, the Court concludes that, as discussed throughout this Order, Lee has failed to demonstrate any specific constitutional violation, prejudice, or irreparable harm that would create an obvious procedural error in his trial.[105] Further, out of the utmost of caution, the Court has offered a variety of alternatives to the parties so as to avoid the need for a mistrial. Because Lee has not demonstrated any "patently clear" reversible error, the Court, having construed Lee's Motion to Reopen Deadlines at Docket 172 as effectively a Motion for Reconsideration, and because Lee has failed to show any manifest error of law or fact, discovery of new material facts not previously available, or intervening change in the law, **DENIES** the Motion at Docket 172.

Accordingly, having considered the briefing and the evidence and arguments presented at the reopened *Franks* hearing on July 18, 2023, the Court orders as follows:

1. The Court **DENIES** Lee's request for suppression based on a *Franks* violation;

---

[104] *See generally* Dkt. 173.

[105] *See* Dkt. 163. At certain points in his briefing Lee seems to suggest that the Government has committed a *Giglio* violation. See Dkt. 171 at 1; *see also Giglio v. United States*, 405 U.S. 150 (1972). In *Giglio*, the Supreme Court held that any impeachment evidence must be disclosed to the defense to impeach the credibility of a prosecution witness. *Giglio* is inapplicable here. Not only does the aerial footage appear to corroborate the testimony of the search warrant affiant, but the Court also prohibited the Government's introduction of this footage and any reference to it.

Case 3:21-cr-00117-TMB-SAO   Document 186   Filed 07/24/23   Page 22 of 23

2. The Motion to Suppress at Docket 171 is **DENIED**; and

3. The Motion to Reopen Deadlines at Docket 172 is construed as a Motion for

   Reconsideration of the Court's Order at Docket 163 and is **DENIED.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 23rd day of July, 2023.


/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE