# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Charles Malik Lee,<br><br>Defendant. | No. 3:21-CR-00117-SHR<br><br>**ORDER DENYING MOTION FOR NEW TRIAL** |

Pending before the Court is Defendant Charles Malik Lee's Motion for New Trial filed pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Doc. 282.) The Motion is fully briefed. For the following reasons, the Court will deny the Motion.

## I.  BACKGROUND

In 2021, Defendant was charged with violations of federal law involving illegal drugs and firearms. (Doc. 2.) His case was initially assigned to former United States District Court Judge Joshua Kindred.[1] (Docs. 6, 7.) Prior to trial, Defendant's case was reassigned to Judge Timothy Burgess due to a conflict of interest between Judge Kindred and a prosecutor in Defendant's case, Assistant United States Attorney (AUSA) Seth Brickey-Smith. (Docs. 63, 73; *see* Doc. 295-2 at 3.) Judge Burgess made all substantive pretrial rulings and presided over the entirety of Defendant's trial except for one mid-trial hearing on a motion for new counsel ("new counsel hearing"), which Judge Kindred

---

[1] Although Judge Kindred resigned on July 8, 2024, he was a judge during the relevant period. (*See* Doc. 282-2.) The Court, therefore, refers to him as Judge Kindred throughout.

presided over. (Docs. 282-3, 282-4.) Following trial, the jury found Defendant guilty on all counts and Judge Burgess sentenced him to a term of incarceration followed by supervised release. (Docs. 203, 204, 239, 241.) In his Motion, Defendant argues a new trial is warranted because Judge Kindred's failure to recuse himself from the new counsel hearing prejudiced Defendant and violated his due process right to an impartial judge. (Doc. 282 at 2–3.)

Defendant's Motion is based on misconduct by Judge Kindred and members of the United States Attorney's Office (USAO) that occurred prior to Defendant's criminal proceedings. While Defendant's pretrial proceedings were ongoing, the Ninth Circuit investigated Judge Kindred's misconduct. (*See* Doc. 282-2.) The investigation revealed Judge Kindred had "create[d] a hostile work environment for his law clerks and [had] an inappropriately sexualized relationship with one of his law clerks both during her clerkship and after she became an [AUSA]." (*Id.* at 1.) The specifics of Judge Kindred's misconduct are set forth in *United States v. Spayd*, and the Court will not recite them here. *See* No. 3:19-CR-00111-MAH-MMS-1, 2025 WL 2825902 (Oct. 6, 2025) (D. Alaska) (slip copy) (providing a detailed summary of the misconduct). Here, the relevant facts concern Judge Kindred's interactions with Brickey-Smith, who prosecuted Defendant's case and acted as a key witness in the investigation into Judge Kindred's misconduct. As such, the Court discusses Judge Kindred's misconduct only as it relates to Brickey-Smith.

### A. Judge Kindred and Brickey-Smith

Judge Kindred's misconduct came to light, in large part, due to actions taken by Brickey-Smith. Brickey-Smith was friends with the law clerk ("the clerk") who had an inappropriate sexual relationship with Judge Kindred during her clerkship. (Doc. 282-11 at 1; 282-12 at 2.) In September 2022, the clerk was hired as an AUSA and maintained a sexual relationship with Judge Kindred while working at the USAO. (Doc. 282-6 at 4–5; Doc. 282-12 at 2.) In October 2022, the clerk told Brickey-Smith Judge Kindred had been inappropriately flirtatious with her. (Doc. 282-6 at 6; Doc. 282-11 at 1; Doc. 282-12 at 2.) Brickey-Smith recommended the clerk report Judge Kindred's conduct to Karen

Vandergaw, another AUSA who had been serving as the clerk's mentor at the USAO. (Doc. 282-6 at 1, 6; Doc. 282-11 at 1; Doc. 282-12 at 3.)

The clerk met with Vandergaw and told her about Judge Kindred's conduct. (Doc. 282-11 at 1–2.) Unbeknownst to the clerk, Vandergaw also had a sexual relationship with Judge Kindred at that time. (Doc. 295-3.) Brickey-Smith also met with Vandergaw to discuss Judge Kindred. (Doc. 282-11 at 1–2; Doc. 282-12 at 3–4.) In that meeting, he told Vandergaw about what the clerk had revealed to him and asked her about the nature of her own relationship with Judge Kindred. (Doc. 282-12 at 3–4.) Additionally, he told Vandergaw he intended to contact the Ninth Circuit's Deputy Director of Workplace Relations regarding Judge Kindred. (*Id.* at 4.) Vandergaw told Judge Kindred about Brickey-Smith's inquiries into his relationships, and Judge Kindred told the clerk he was worried Brickey-Smith was spreading rumors about him. (Doc. 282-7 at 34–38; Doc. 282-12 at 4–5.)

Vandergaw subsequently told another AUSA, Adam Alexander, that Brickey-Smith had made comments that made her uncomfortable. (Doc. 282-16 at 65-66.) This allegation was reported to USAO Criminal Chief Christina Sherman. (*Id.*) Chief Sherman and First Assistant United States Attorney (FAUSA) Kathryn Vogel met with Brickey-Smith regarding the allegations. (Doc. 282-12 at 5–6.) In that meeting, FAUSA Vogel and Chief Sherman relayed Vandergaw's complaint without mentioning Vandergaw by name. (*Id.*) In response, Brickey-Smith told Chief Sherman and FAUSA Vogel he had received information a judge had engaged in misconduct with one AUSA and might be having an inappropriate relationship with another AUSA, and he believed his inquiries into the misconduct motivated the complaint against him. (*Id.*) He also told them he had contacted the Alaska State Bar and the Ninth Circuit Judicial Council regarding his concerns. (Doc. 282-18 at 1.)

A few days later, Judge Kindred told the clerk to tell Brickey-Smith he wanted to meet with him, and Brickey-Smith agreed to the meeting. (Doc. 282-12 at 6–7.) When they met, Judge Kindred discussed Vandergaw's complaint with Brickey-Smith and

- 3 -
Case 3:21-cr-00117-SHR     Document 322     Filed 12/22/25     Page 3 of 17

provided Brickey-Smith various pieces of advice about navigating the complaint. (*Id.* at 7.) He called Vandergaw "crazy" and said she was not credible. (*Id.*) He also praised Brickey-Smith for having a stellar reputation in the legal community and said he had confidence Brickey-Smith would navigate Vandergaw's complaint with ease. (*Id.*) Following the meeting, Brickey-Smith provided names of all involved parties—i.e., Judge Kindred, the clerk, and Vandergaw—to FAUSA Vogel. (*Id.* at 8.) After he did so, the USAO began investigating the relationships of those involved with Judge Kindred. (*Id.* at 11.) Chief Sherman, FAUSA Vogel, and another AUSA, Lane Tucker, requested all cases in which Vandergaw, the clerk, or Brickey-Smith had appeared before Judge Kindred be reassigned. On November 15, 2022, the Honorable Sharon L. Gleason, Chief Judge for the District of Alaska, reassigned those cases, including Defendant's case in which Brickey-Smith was the prosecutor.

### B. Judge Kindred's Involvement in Defendant's Case

Judge Burgess took over Defendant's case following Judge Kindred's removal.[2] (Doc. 73.) Defendant's trial began on July 17, 2023. (Doc. 154.) On the second to last day of trial, after the government had rested its case, Defendant requested new counsel. (Doc. 256 at 7.) After initially describing Defendant's request as "manipulative" based on its timing, Judge Burgess decided to "bring another judge in" because he felt it would be "cleaner" for a judge other than himself to rule on the motion. (*Id.* at 7–8.) He stated Judge Kindred would hear the motion, including "any concerns from the defense about going forward with the current state of affairs." (*Id.* at 8.) He noted the hearing before Judge Kindred would be ex parte and government counsel would not be present. (*Id.*)

Prior to excusing the government, Judge Kindred had a brief discussion with AUSA Alexander, who was appearing for the government. (Doc. 282-3 at 2–4.) Brickey-Smith was also present. (Doc. 282-23.) Alexander told Judge Kindred the government did not

---

[2]His removal occurred before he had made any substantive rulings. Defendant briefly mentions Judge Kindred's handling of pretrial hearings before the case was reassigned. (Doc. 282 at 15.) However, Defendant does not make any meaningful arguments regarding those hearings, and the Court does not address Judge Kindred's involvement in the case during his initial assignment.

object to him handling the motion. (Doc. 282-3 at 2.) Judge Kindred told counsel he was only on the bench "for the limited purpose" of hearing Defendant's motion for new counsel. (*Id.* at 3.) Alexander acknowledged granting the motion would likely result in a mistrial. (*Id.* at 4.) Judge Kindred agreed but decided to move forward with the ex parte hearing and excused the government from the courtroom. (*Id.*)

During the new counsel hearing, Defendant told Judge Kindred he was unhappy with his counsel's refusal to obtain certain evidence Defendant believed was helpful to his case. (Doc. 282-4 at 2–3, 9.) Defendant also disagreed with his counsel's decision not to call Defendant's brother as a witness. (*Id.* at 9.) Ultimately, Defendant and his counsel disagreed over trial strategy. Judge Kindred asked Defendant if he had addressed his concerns with his counsel prior to trial. (*Id.* at 7–8.) Defendant replied he had done so "many times." (*Id.*) Judge Kindred explained Defendant's answer indicated the motion was untimely because he could have moved for new counsel prior to the commencement of trial. (*Id.* at 8.) Additionally, Judge Kindred explained requests for new counsel cannot be granted every time a defendant disagrees with his counsel regarding trial strategy, especially when trial is already underway. (*Id.* at 12–13.) Judge Kindred denied the motion, and trial continued without Judge Kindred's further involvement. (*Id.* at 15.)

### C. Post-trial events

On July 25, 2023, the jury returned a guilty verdict on all counts against Defendant. (Docs. 197, 203.) Defendant filed a timely motion for new trial, which Judge Burgess denied. (Docs. 205, 211.) On February 22, 2024, Defendant timely appealed to the Ninth Circuit. (Doc. 245.) On July 12, 2024, while Defendant's appeal was pending, USAO management identified Defendant's case as one of 23 that may have been affected by the "potential conflicts of interest or appearance of impropriety" involving Judge Kindred. (Doc. 270-6 at 3.)

On August 19, 2024, Defendant's attorney, Daniel Poulson, wrote to Brickey-Smith to request the government preserve all exculpatory and potentially useful evidence related to the conflict of interest between the USAO and Judge Kindred. (Doc. 295-5.) Poulson

indicated he was considering filing a motion under 28 U.S.C. § 2255 and described his understanding of the situation based on two lists the government had disclosed to the defense, prior recusal and reassignment orders, the Ninth 'Circuit's report, and media coverage. (*Id.*) Specifically, Poulson stated,

> 1) The three prosecutors with potential conflicts of interest are AUSA Seth Brickey-Smith, AUSA Karen Vandergaw, and [the clerk].
>
> 2) The government was aware of the identities of these three attorneys and their respective conflicts of interest with Judge Kindred in October 2022.
>
> 3) The government communicated ex parte with Chief Judge Sharon Gleason in November 2022 to disclose these conflicts and request that Judge Kindred be recused from and not assigned to cases involving these three AUSAs.
>
> 4) The government never disclosed at any time to any defense attorney or defendant the identities of these conflicted attorneys nor that any conflict of interest existed.

(*Id.*) Poulson requested the government disclose a long list of information, including internal USAO communications regarding Judge Kindred's conflicts of interests. (*Id.*) AUSA Lane Tucker responded for the government to confirm receipt of Poulson's letter. (Doc. 295-6.)

On October 22, 2024, Defendant asked the Ninth Circuit to stay his appeal to allow him "to litigate a motion for new trial in the district court pursuant to Federal Rule of Criminal Procedure 33." (Doc. 17.1, 9th Cir. No. 24-966.) On November 18, 2024, the Ninth Circuit granted Defendant's unopposed motion. (Doc. 269.)

On January 16, 2025, Defendant filed a motion to compel production of discovery in the district court. (Doc. 270.) Judge Burgess denied the motion without prejudice for lack of jurisdiction due to the pending appeal. (Doc. 273.) On February 12, 2025, Defendant moved in the Ninth Circuit for a limited remand of his case to the district court. (Doc. 22.1, 9th Cir. No. 24-966.) On March 20, 2025, the Ninth Circuit granted the motion "for the limited purpose of permitting the district court to consider appellant's motion for a new trial and to conduct any necessary proceedings associated with that motion." (Doc.

275.)

On June 13, 2025, the government disclosed to defense counsel, for the first time for purposes of Defendant's litigation, Brickey-Smith's declarations and interviews with the Department of Justice's Office of Professional Responsibility, in which he discussed his meeting with Judge Kindred.[3]  On July 17, 2025, Defendant's Motion for New Trial was filed under seal.  (Docs. 282, 288.)  On August 1, 2025, the case was reassigned to the undersigned.  (Doc. 287.)

## II. LEGAL STANDARDS

Federal Rule of Criminal Procedure 33(a) provides, on a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial is "directed to the discretion of the district judge," but such motions are generally disfavored and should only be granted in "exceptional" cases. *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

The amount of time a defendant has to file a motion for new trial depends on the basis for the motion.  *See* Fed. R. Crim. P. 33(b).  When a motion for a new trial is based on newly discovered evidence, it must be filed within 3 years after the verdict or finding of guilt.  Fed. R. Crim. P. 33(b)(1).  But, a motion for a new trial based on anything other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilt.  Fed. R. Crim. P. 33(b)(2).

The Supreme Court has concluded Rule 33's time limits are non-jurisdictional, inflexible claim-processing rules.  *Eberhart v. United States*, 546 U.S. 12, 17–19 (2005) (noting failure to raise time limits can result in the forfeiture of arguments based on them but "district courts must observe the clear limits" of time-based requirements when they are properly raised"); *see also* Wright & Miller, 3 Fed. Prac. & Proc. § 590 (5th ed.). However, Federal Rule of Criminal Procedure 45 allows the Court, either sua sponte or pursuant to a party's motion, to extend time if the party failed to file because of excusable neglect.  Fed. R. Crim. P. 45(b)(1)(B); *see also* Fed. R. Crim. P. 45 Advisory Committee'

---

[3]The government does not argue Defendant had this discovery prior to June 13, 2025.  (Doc. 295 at 38–41.)

Note to 2005 Amendment ("[I]f for some reason the defendant fails to file the underlying motion within the specified time, the court may nonetheless consider that untimely motion if the court determines that the failure to file it on time was the result of excusable neglect.").

**III. DISCUSSION**

    **A. Defendant's Motion is timely under Rule 33.**

Defendant advances two bases for why his Motion is timely. First, he argues the misconduct he points to constitutes "newly discovered evidence," and the Motion is timely under Rule 33(b)(1)'s three-year window. (Doc. 282 at 23.) Alternatively, he argues his failure to timely file the Motion is the result of excusable neglect. (Doc. 282 at 26.)

        i.    <u>Defendant's Motion is not based on "newly discovered evidence."</u>

In the Ninth Circuit, "a Rule 33 motion based upon 'newly discovered evidence' is limited to where the newly discovered evidence relates to the elements of the crime charged," *United States v. Hanoum*, 33 F.3d 1128, 1130 (9th Cir. 1994), and it "must indicate that a new trial probably would produce an acquittal," *id.* (quoting *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir. 1986), *cert. denied*, 481 U.S. 1030 (1987)). Here, the facts cited by Defendant—misconduct by Judge Kindred and Brickey-Smith's role in bringing the misconduct to light—do not qualify as "newly discovered evidence." They do not relate to the elements of his charged crimes. Therefore, the three-year window provided by Rule 33(b)(1) does not apply.

        ii.    <u>Defendant's failure to timely file his Motion is the result of excusable neglect.</u>

The parties agree the four-factor test articulated in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership* determines whether Defendant's failure to timely file resulted from excusable neglect. 507 U.S. 380, 395 (1993); *see also Stutson v. United States*, 516 U.S. 193, 197–98 (1996) (extending the test to criminal cases after its first articulation in a bankruptcy proceeding). (Doc. 282 at 27; Doc. 295 at 35–37.) The four-factor *Pioneer* test is an equitable evaluation that "tak[es] account of all relevant

circumstances," including (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. 507 U.S. at 395.

Applying those factors, the Court finds Defendant's failure to timely file the Motion is the result of excusable neglect. Regarding the first two factors, the government concedes the delay between the jury's verdict on July 25, 2023, and the date on which Defendant discovered the factual predicate for his Motion is excusable. (Doc. 295 at 35.) Defendant did not have all the predicate facts to support a cognizable claim until June 13, 2025, when he received additional discovery from the government, including discovery regarding Brickey-Smith's involvement in the investigation into Judge Kindred's misconduct. (*See* Doc. 282-22.) Therefore, his failure to file a motion in the district court before that date is excusable. Defendant filed the Motion 34 days later, on July 17. (Doc. 282.) As to prejudice, the only potential impact on judicial proceedings cited by the government is the fading of witnesses' memories. (Doc. 295 at 37.) But any memory loss or other prejudice resulting from the 34 days it took Defendant to file the motion is minor compared to the 689-day delay between the verdict and June 13, 2025, when Defendant received the necessary discovery to support his Motion.

Regarding the third factor—the reason for the delay and whether it was within the reasonable control of the movant—the Court declines to consider Defendant's failure to file a motion to extend time a barrier to finding excusable neglect despite the government's argument to the contrary. (*See* Doc. 295 at 38-41.) Any motion filed prior to the Ninth Circuit's remand would have likely been denied for lack of jurisdiction, (*see* Doc. 273 (denying Defendant's motion for lack of jurisdiction), and the failure to file a motion to extend time after the Ninth Circuit's limited remand is attributable to Defendant's counsel rather than Defendant himself. *See Spayd*, 2025 WL 2825902, at *9 (under similar facts, attributing the failure to file a motion requesting additional time to defense counsel rather than defendant and concluding this factor weighed in favor of finding excusable neglect).

And again, Defendant did not have the necessary facts underlying his claim until June 13, 2025, when the government produced additional discovery.

Finally, regarding the fourth factor—whether Defendant acted in good faith—there is no evidence Defendant purposefully delayed filing the Motion to weaken the government's case. The record demonstrates Defendant took good-faith measures to pursue the discovery needed to support his Motion. In sum, upon evaluation of the four factors outlined in *Pioneer*, the Court finds Defendant's delayed filing was the result of excusable neglect.

### B. Although Judge Kindred should have recused himself, Defendant is not entitled to a new trial.

Defendant asserts Judge Kindred should have disqualified himself from this case due to his conflicts with Vandergaw, Brickey-Smith, and Alexander pursuant to due process principles and to comply with 28 U.S.C. § 455(a). (Doc. 282 at 29, 37.) The Court focuses only on Judge Kindred's conflict with Brickey-Smith. *See Silverton Mountain Guides LLC v. U.S. Forest Serv.*, No. 3:22-CV-00048-SLG, 2025 WL 715842 (D. Alaska Feb. 21, 2025) (refusing to impute Judge Kindred's conflict of interests to the entire USAO). This conflict led to his initial removal from Defendant's case. And, despite that removal, Judge Kindred again became involved in Defendant's case by presiding over the new counsel hearing while Brickey-Smith still represented the government.

Defendant makes three main arguments for a new trial: (1) the government is estopped from arguing Judge Kindred did not have a duty to recuse himself from the new counsel hearing; (2) Judge Kindred violated § 455(a), the federal recusal statute, by presiding over the new counsel hearing; and (3) Judge Kindred presiding over the new counsel hearing violated the Due Process Clause of the United States Constitution.[4]

As a threshold matter, the Court addresses Defendant's contention the government

---

[4] Defendant argues an evidentiary hearing may be required to "further develop the facts necessary to resolve th[e] motion." (Doc. 282 at 44.) The Court will resolve the motion on the facts before it, and an evidentiary hearing is not necessary. *See United States v. Navarro–Garcia*, 926 F.2d 818, 822 (9th Cir. 1991) (concluding an evidentiary hearing is unnecessary if the Court "is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial").

should be judicially estopped from arguing Judge Kindred had no duty to recuse. (Doc. 317.) Judicial estoppel is an equitable doctrine "generally prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). There is no Ninth Circuit opinion explicitly determining whether judicial estoppel can be applied against the government in a criminal case. However, the Ninth Circuit has applied the doctrine in habeas proceedings in addition to an ancillary proceeding to criminal forfeiture without analysis as to whether the doctrine is applicable. *See United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1148–49 (9th Cir. 2011); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Given this Ninth Circuit precedent, the Court finds judicial estoppel can be applied against the government if the factors identified by the Supreme Court in *New Hampshire* are met.

In *New Hampshire*, the Supreme Court identified three factors that "typically inform the decision whether to apply the doctrine in a particular case": (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. 532 U.S. at 750–51.

The Court finds the factors for judicial estoppel are satisfied here. The government's current position—that Judge Kindred had no duty to recuse himself from this case—is clearly inconsistent with its previous position that Judge Kindred be removed from all cases in which Brickey-Smith had entered an appearance. Permitting the government to litigate the recusal issue now could convey the perception the government's former position was intended to manipulate the Court into reassigning judicial officers for reasons other than Judge Kindred's misconduct. Alternatively, it could create the

perception the government changed its position only to avoid a new trial. And, as a matter of basic fairness, it would be inequitable to allow the government to take the position a judge should be recused from a case and then reverse its position to say the judge properly presided over a hearing in that case, all without any notice to the defendant.

In sum, the Court concludes it is wholly unfair for the government to request reassignment of a judge due to a perceived conflict of interest and later argue the judge did not need to be recused at all. As such, the government is judicially estopped from arguing Judge Kindred did not have a duty to recuse himself.

> i. Judge Kindred was disqualified from the new counsel hearing and had a duty to recuse himself under § 455(a), but his failure to do so was harmless.

There are two primary reasons Judge Kindred should not have presided over the new counsel hearing: (1) he had already been essentially recused from Defendant's case and therefore was disqualified from all related proceedings, including the new counsel hearing, and (2) he had an independent duty to recuse himself under § 455(a).

While Judge Kindred's initial disqualification from Defendant's case was not labeled a "recusal," FAUSA Vogel stated the reason for removal was to avoid the need for the USAO to file a motion to recuse in each case assigned to Judge Kindred. (Doc. 282-18 at 8–9; *see also* 295-3 at 5 (Vandergaw describing removals as "the list of recusals from Judge Kindred's cases"). Once that measure was taken, Judge Kindred had essentially been recused from Defendant's case. Section 455(d)(1) defines "proceeding," in the context of recusal, as including "pretrial, trial, appellate review, or other stages of litigation." Once Judge Kindred had been recused, he remained disqualified from all stages of litigation in Defendant's case, including the new counsel hearing.

Additionally, even if Judge Kindred had not been removed from Defendant's case, he had an independent duty to recuse himself from hearing the new counsel motion under § 455(a). Section 455(a) states a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Recusal under § 455(a) "is appropriate whe[n] 'a reasonable person with knowledge of all the facts would conclude that the

judge's impartiality might reasonably be questioned.'" *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993)).

"[T]he reasonable person is not 'hypersensitive or unduly suspicious, but rather instead a well-informed, thoughtful observer.'" *United States v. Federico*, No. 12-cr-00862-YGR-2 (HSG), 2018 WL 9802133, at *2 (N.D. Cal. Aug. 24, 2018) (quoting *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)). The standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Holland*, 519 F.3d at 913. But, "[u]nder § 455(a), impartiality must be 'evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance.'" *Carey*, 929 F.3d at 1104 (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954))). "Disqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *Holland*, 519 F.3d at 913.

The Court concludes a well-informed, thoughtful observer would have reasonably questioned Judge Kindred's impartiality in this case. Brickey-Smith had been actively involved in the investigation against Judge Kindred. Indeed, he helped launch the investigation by telling Chief Sherman and FAUSA Vogel about his suspicions regarding Kindred's relationships with the clerk and Vandergaw. He also confided in Vandergaw, who then made false allegations against him, all while Vandergaw was, herself, engaged in a sexual relationship with Judge Kindred. Lastly, he had a meeting with Judge Kindred where Judge Kindred effectively attempted to placate Brickey-Smith by complimenting him on his reputation in the legal community. A reasonable observer would find these facts troubling and have doubts about Judge Kindred's impartiality in presiding over a

case—even in a limited capacity—where Brickey-Smith was the prosecutor. Therefore, Judge Kindred violated § 455(a) by failing to recuse himself from the new counsel hearing.

There is no prescribed remedy for a violation of § 455 and courts apply a harmless-error analysis to determine an appropriate remedy. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988). When deciding whether to vacate a judgment for a violation of § 455(a), courts consider three factors set forth in *Liljeberg*: (1) the risk of injustice to the parties in the particular case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. *Id.* at 864. Defendant argues all three *Liljeberg* factors weigh in favor of the Court vacating the judgment against him and granting him a new trial. The Court disagrees.

### *a. Risk of injustice*

Although Defendant argues Judge Kindred's denial of his new counsel motion was prejudicial, he does not sufficiently argue a basis upon which a different judge might have granted the motion. In considering a motion for new counsel, a trial court must inquire into the extent of the conflict as well as the timeliness of the request. *United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001). Defendant told Judge Kindred his conflict with his counsel stemmed from counsel's decision to omit certain evidence and not call Defendant's brother as a witness. As Judge Kindred explained during the hearing, disputes over trial strategy do not warrant granting a request for new counsel. *See Stenson v. Lambert*, 504 F.3d 873, 888 (9th Cir. 2007). Additionally, Judge Kindred asked Defendant if he had addressed his concerns with his attorney prior to trial, and Defendant responded he had done so "many times." With trial already far underway, granting the motion would have likely resulted in a mistrial, and Defendant's failure to raise the issue with the Court sooner rendered the motion untimely. Upon review, the Court concludes any judge presiding over the new counsel hearing would have denied the motion, just as Judge Kindred did. The motion was untimely and the extent of the conflict was de minimis. The Court therefore does not find this factor weighs in favor of granting a new trial.

### b. *Injustice in other cases*

Defendant asserts "[a] new trial is necessary to send the message that prosecutors must notify defendants where there is a substantial risk of judicial bias." (Doc. 282 at 43.) The Court agrees the government, namely Brickey-Smith, should have had the foresight to disclose his conflict with Judge Kindred to defense counsel prior to Judge Kindred hearing Defendant's motion for new counsel. Where an oversight like this results in prejudice to the defendant, a new trial is likely warranted. *See Liljeberg*, 486 U.S. at 862. But here, where the facts would give any reasonable judge grounds to reach the same conclusion Judge Kindred did, and Defendant was not prejudiced, a new trial is not necessary. Declining to grant Defendant a new trial will not result in injustice in other cases.

### c. *Undermining the public's confidence*

Similarly, denying Defendant his requested relief will not undermine the public's confidence in the judicial process because, upon independent review of the record, the Court finds any reasonable judge would have denied the motion for new counsel. Further, the Court acknowledges the government should be estopped from now arguing Judge Kindred did not have a duty to recuse himself, and, in any event, Judge Kindred did have a duty to recuse himself under § 455(a). And the Court acknowledges Brickey-Smith should have disclosed his conflict with Judge Kindred to Defendant before agreeing to Judge Kindred presiding over the new counsel hearing. The Court's acknowledgement of these issues is enough to instill confidence in the judiciary without the need to grant Defendant—who suffered no prejudice as a result of these errors—relief in the form of a new trial.

In sum, the Court finds the *Liljeberg* factors do not weigh in favor of granting a new trial and Judge Kindred's failure to recuse himself was harmless error.

    ii. <u>Judge Kindred's failure to recuse did not violate the Due Process Clause.</u>

Pursuant to the Due Process Clause, a judge must recuse himself "when the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable.'" *Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) (quoting *Caperton v. A.T. Massey Coal*

*Co.*, 556 U.S. 868, 872 (2009)); *see Chen ex rel. Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 725–26 (9th Cir. 2022). "The Due Process Clause demarks only the outer boundaries of judicial disqualifications." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986). A judge's failure to recuse in violation of the Due Process Clause constitutes structural error not subject to harmless-error review. *Williams*, 579 U.S. at 14–16.

In most cases, an issue involving judicial recusal does not constitute a due process deficiency. *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990). Indeed, "most matters relating to judicial disqualification d[o] not rise to a constitutional level," *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702 (1948), and are "addressed by more stringent and detailed ethical rules," *Williams*, 579 U.S. at 13; *see also Tumey v. Ohio*, 273 U.S. 510, 523 (1927) ("All questions of judicial qualification may not involve constitutional validity."). Accordingly, conduct violative of § 455 may not constitute a due process deficiency, and "[t]he Supreme Court has recognized only a few circumstances in which an appearance of bias necessitates recusal to ensure due process of law." *Greenway v. Schriro*, 653 F.3d 790, 806 (9th Cir. 2011).

In *Tumey*, the Supreme Court found the defendant's due process rights were violated where he was convicted by the town mayor, who profited financially from convictions. 273 U.S. at 523. In *In re Murchison*, another case where the Court found due process required recusal, the judge acted as a "one-man grand jury" by hearing witnesses testify about a suspected crime and then presiding over a hearing where those witnesses were found in contempt for their conduct before the "one-man grand jury." 349 U.S. at 136. The *Murchison* Court emphasized there is a due process issue when a judge's assumption of dual roles makes him part of the prosecution. *Id.*

Further, in *Mayberry v. Pennsylvania*, the Supreme Court held when a defendant directs personal insults at a trial judge during proceedings, and the judge later imposes punishment for criminal contempt arising from those insults, due process requires the contempt charge be heard by a different judge. 400 U.S. 455, 466 (1971). And in *Caperton*, the Court held a judge should have recused himself as a matter of due process

when a party appearing before him had previously contributed three million dollars to his election campaign. 556 U.S. at 885–87.

The circumstances here depart significantly from *Tumey*, *Murchison*, *Mayberry*, and *Caperton*. In each of those cases, there was a direct, personal involvement of the judge with the entire case or a party before him. *See Greenway*, 653 F.3d at 806. Notably, here, Judge Kindred's failure to recuse occurred in connection with a single hearing, not the entire trial, and the proceeding did not involve the kinds of personal, financial, or structural incentives that traditionally trigger constitutional concerns. Judge Kindred had no specific financial or personal stake in denying Defendant's new counsel motion and faced no extreme incentives akin to those in *Tumey*, *Murchison*, *Mayberry*, and *Caperton*. The circumstances here reflect an issue with an appearance of bias under § 455(a) rather than the constitutionally intolerable risk of actual bias required for a violation of a defendant's due process rights. *See Williams*, 579 U.S. at 4. Accordingly, the Court finds Judge Kindred did not have a duty to recuse pursuant to the Due Process Clause.

## IV. CONCLUSION

**IT IS ORDERED** Defendant's Motion is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** the Clerk of Court shall close this case.

Dated this 11th day of December, 2025.

Honorable Scott H. Rash
United States District Judge